59 CCPA
### Application of Gerard R. KAMM and Charles H. Young.
### Patent Appeal No. 8562.

United States Court of Customs and Patent Appeals.

Jan. 13, 1972.

R. J. Eichelburg, New York City, attorney of record, for appellants; L. C. Smith, New York City, Paul A. Rose, Washington, D.C., of counsel.

S. Wm. Cochran, Washington, D.C., for the Commissioner of Patents; Jack E. Armore, Washington, D.C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's final rejection of claims 1–13 and 18–65 of appellants' application serial No. 347,672, filed February 27, 1964, on "Inhibition of Polymerization on Molecular Sieves." At oral hearing, counsel for appellants withdrew claims 1–4, 27–30, 40–43 and 53–56 from appeal, and the appeal as to those claims is accordingly dismissed. This leaves the rejection of claims 5–13, 18–26, 31–39, 44–52 and 57–65 for our consideration. We reverse.

## THE INVENTION

At the time the present invention was made, it was known to use molecular sieves in the separation of components from fluid hydrocarbon streams. The molecular sieves used are called zeolites and are three-dimensional silica-alumina networks having pores of molecular size and containing metal cations. The sieves facilitate separation by absorbing molecules of diameters smaller than the pore size of the sieves used while not adsorbing molecules of larger diameter. By using sieves of appropriate pore size one can selectively remove components of a liquid or gaseous hydrocarbon mix.

A known problem with this process is the tendency of molecular sieves to catalyze the polymerization of unsaturated hydrocarbons such as isobutylene, isoprene, butadiene and vinylacetylene. The polymers are formed on the sieves causing a reduction in the capacity of the sieves and are not easily removed.

The object of appellants' invention is to minimize or avoid the undesirable polymerization reaction, and this is realized by treating the molecular sieves with an organic compound which contains oxygen in the form of a hydroxyl group or ether linkage. Although the mechanism is in dispute, the result is inhibition of the polymerization—whether by neutralizing the catalytic effect of the sieves or by inhibiting the tendency of olefins to polymerize.

The subject matter claimed is the method of inhibiting the catalytic activity of a molecular sieve by impregnating it with the oxygen-containing compound, the treated sieve as an article of manufacture, and the method of separating components of a hydrocarbon stream using treated sieves.

Claim 5 is typical of the remaining claims drawn to the method of making the treated sieves and reads as follows:

5. The method for inhibiting the catalytic activity of a molecular sieve for the polymerization of unsaturated polymerizable organic compounds which comprises impregnating said molecular sieve with a polymerization inhibiting amount of a hydrocarbon phenolic compound having from 1 to 20 carbon atoms and from 1 to 2 hydroxyl groups.

The other claims of this method group differ in the impregnant used with such impregnants as phenol, 1-naphthol, isopropyl ether and heterocyclic ethers specifically claimed.

Claim 18 is representative of the article claims and reads:

18. As an article of manufacture, a molecular sieve containing a polymerization inhibiting amount of a hydrocarbon phenolic compound having from 1 to 20 carbon atoms and from 1 to 2 hydroxyl groups.

As with the method claims, the article claims differ from one another in the sieve treating agent.

The method of use claims may be illustrated by claim 31 which reads as follows:

31. In a process for the separation of organic compounds with a molecular sieve by contacting said sieve with said compounds and removing an enriched component, the improvement of employing a molecular sieve containing a polymerization inhibiting amount of a hydrocarbon phenolic compound having from 1 to 20 carbon atoms and from 1 to 2 hydroxyl groups.

Here again, the claims of this group differ in the specific inhibitor used.

## THE REJECTION

The examiner rejected claims 1–3 as unpatentable over Hanson[1] under 35 U. S.C. § 102 and rejected all the claims (1–13 and 18–65) as unpatentable under 35 U.S.C. § 103 over Benesi et al. (Benesi)[2] in view of Richardson et al.

1. U.S. Patent 3,209,050, issued September 28, 1965.

2. U.S. Patent 3,106,593, issued October 8, 1963.

(Richardson),[3] Monroe et al. (Monroe),[4] Gleim et al. (Gleim)[5] and Ecke et al. (Ecke).[6] The board affirmed both rejections. Although appellants urged error in the section 102 rejection in their written brief, counsel conceded at oral hearing that the Hanson reference accidentally anticipated those claims which read on the use of an aliphatic alcohol as the sieve treating agent while contending that Hanson did not actually teach the invention. Counsel thereupon withdrew from appeal those claims which read on an aliphatic alcohol. The rejection in view of Hanson has thereby been rendered moot and no further discussion of this reference is necessary.

Benesi is the principal patent relied upon and is directed to the same problem as the claimed invention. After disclosing the suitability of zeolitic molecular sieves in the separation of hydrocarbon components, the patentees state:

> It has now been found that the undesired polymerization of reactive olefins in contact with zeolitic molecular sieves can be readily inhibited by a simple and effective treatment of the molecular sieve in accordance with this invention. The treatment consists in adding to the zeolitic molecular sieve a controlled amount of a nitrogen base whose molecular size is such that it can enter the pores of the molecular sieve.

To be functional, the nitrogen compound must be a strong base and of such a size that it can enter the pores of the sieve. Ammonia and various primary, secondary and tertiary amines are indicated as suitable, as well as urea, ammonium carbonate and similar compounds which decompose to form ammonia under relatively mild conditions.

The board said of this reference:

> Benesi et al. use a specific group of known nitrogen base polymerization inhibitors, including ammonia, amines, ammonium carbonate and urea to inhibit polymerization of unsaturated polymerizable organic compounds in molecular sieves and to prevent the loss in sieve capacity and the problem of sieve regeneration that are caused by the resulting polymers * * *.
>
> *     *     *     *     *     *
>
> That there is a problem of undesired polymerization in connection with molecular sieves is known to the worker of ordinary skill in the art from Benesi et al., who, as we have noted above, also teach the practical troubles that result from the polymers formed and who alleviate these troubles by the use of a conventional class of polymerization inhibitors. We consider that this constitutes abundant suggestion that other classes of polymerization inhibitors would be operative, at least to a degree, in solving the problem.

From the quoted material, it appears that the board regarded Benesi as teaching or suggesting the use of polymerization inhibitors broadly in overcoming the problems attendant utilization of molecular sieves in hydrocarbon separation processes. The conclusion seems premised on the assumption that the nitrogen base inhibitors were *known* or *conventional* inhibitors of olefin polymerization. Working from this conclusion, the board agreed with the examiner that it would be obvious to substitute any known olefin polymerization inhibitor for the specific nitrogen compounds disclosed by Benesi and thereby arrive at the claimed invention.

Of the three secondary patents relied upon, the board said:

> The references used in conjunction with Benesi et al. show that appellants' inhibitors are old for use in preventing the polymerization of unsaturated organic compounds in fuels and lubricating and similar oils during

3. U.S. Patent 2,119,114, issued May 31, 1938.

4. U.S. Patent 2,805,190, issued September 3, 1957.

5. U.S. Patent 2,535,058, issued December 26, 1950.

6. U.S. Patent 3,019,097, issued January 30, 1962.

storage and treatment of these materials and the accompanying adverse effects of the polymers so formed. It is the Examiner's view that it would have been obvious to substitute these inhibitors for those of Benesi et al. to perform in molecular sieves, their known polymerization inhibiting function.

Richardson discloses agents which may be added to lubricating oils to impart improved resistance to oxidation. An alcohol, particularly an aliphatic alcohol, having about 10 to 25 carbon atoms, is indicated as suitable in this capacity. However, this patent discloses that previously used oxidation inhibitors have been unsatisfactory and names, inter alia, "a- or b-naphthol, gosspol, aromatic SO₂ extracts of crude oils, or phenolic or other extracts thereof, complex organic compounds * * * containing nitrogen, such as dimethylaniline * * *."

Monroe discloses vinylidene polymerization retarders which are alkynols having at least one acetylenic triple bond and at least one tertiary alcoholic hydroxyl radical. In discussing previous attempts to inhibit vinylidene polymerization, this patent indicates that the use of "organic animo compounds and phenolic materials" has not given satisfactory results. Moreover, Monroe teaches that their alkynols "are not effective retarders and do not appreciably affect the polymerization of vinylidene compounds * * * in the presence of effective polymerization catalysts."

Gleim is concerned with the deterioration of compositions containing unsaturated hydrocarbons due to "oxidation, polymerization or other undesired reactions." The problem is solved by the addition of an inhibitor which may be "a bicyclic compound containing an aromatic ring joined to a heterocyclic oxygen ring, the aromatic ring being substituted by a hydroxy group in the position para to the bridge oxygen and by a hydrocarbon radical containing at least 3 carbon atoms in a position ortho to the hydroxy group", specific suitable compounds being certain substituted para-hydroxy-coumarans and para-hydroxy-chromans. While a hydroxy group is indicated to be essential, "it is also an essential feature that the substituent group in a position ortho to the hydroxy group contains at least 3 carbon atoms * * *." Where this latter feature is not adhered to, the data in the patent specification indicates that markedly poorer stability is achieved.

Ecke discloses the stabilization of jet fuels by the addition of a controlled amount of a 2, 6-di-alkyl phenol. Jet fuels are apparently subject to extraordinary deterioration problems because of the high temperatures to which they are exposed. These patentees report that prior investigators found conventional gasoline stabilizers to be ineffective and specifically name 4-methyl-2, 6-di-tert-butyl and N.N'-di-sec-butyl-phenylenediamine as previously tried but ineffective compounds.

### OPINION

We have considered each of the claims before us and conclude that none is prima facie obvious from the patent disclosures relied upon. There is a dispute in the record as to the nature of the mechanism by which the invention operates, and appellants have submitted certain references for the purpose of showing that the mechanism of the present invention is such that some of the polymerization inhibitors of the cited prior art would not be expected to function in the molecular sieve environment. The Patent Office has refused to consider these references and has further taken the view that the mechanism is admitted by appellants to be hypothetical and could not in any event be the basis for patentability. We do not reach any of these issues because we find that the position of the board cannot be sustained regardless of the mechanism or the facts respecting the mechanism which appellants sought to establish.

As noted above, Benesi discloses the inhibition of sieve-catalyzed olefin polymerization by treating the sieves with

certain nitrogen compounds. The secondary disclosures, however, neither teach the equivalence of the Benesi nitrogen compounds to the compounds used by appellants nor establish that appellants' agents were known polymerization inhibitors such that it may be said that it would have been obvious to use them in the molecular sieve context. Each of the Richardson, Monroe, Gleim, and Ecke patents is directed to fairly specific agents for use in inhibiting undesired reactions and the individual teachings are recurrently inconsistent with the overall suggestion that the board has found. As appellants correctly contend, Richardson was concerned with the oxidation of oil and the formation of sludge which may or may not involve the polymerization of unsaturated hydrocarbons. There is certainly no clear disclosure of a polymerization-inhibiting effect of the specific alcohols disclosed by the patentees. Further, as we have observed above, Richardson teaches the ineffectiveness of various compounds such as phenols, naphthols and amines.

The Monroe patent is deficient in the same respect as the Richardson patent, i.e., in its disclosure of the ineffectiveness of phenols and amines. Such teachings are inconsistent with appellants' use of phenols and with the board's implicit assertion that in the molecular sieve environment it would have been obvious to substitute the compounds of Richardson and Monroe for the nitrogen compounds of Benesi.

Appellants further contend, with some force, that the Monroe disclosure is inapposite since its agents are taught not to be effective in the presence of polymerization catalysts. The solicitor states that this teaching "would not detract from the use of those inhibitors with molecular sieves which, although they may induce a certain amount of polymerization, would not generally be regarded as 'effective polymerization catalysts.'" There has been no serious challenge to appellants' assumption that the molecular sieves do function as catalysts of the undesired olefin polymerization. The solicitor appears to take the position that molecular sieves would not come readily to mind were one of ordinary skill in the art thinking of olefin polymer catalysts. This may be true, but is not the proper perspective from which to view the Monroe statement. The question is whether, given the Benesi disclosure which portrays zeolitic sieves as inducing polymerization, one of ordinary skill in the art would consider the Monroe agents to be suitable inhibitors in light of their caveat regarding the presence of polymerization catalysts. Like appellants, we think the answer is no.

Although appellants would distinguish Gleim on the basis of the mechanism involved, we note that the stabilization for which the disclosed agents are indicated is against deteriorating reactions in the most general sense. It would strain the Gleim disclosure to extract a teaching of the use of the very specific hydroxy-containing agents as a substitute for the Benesi nitrogen compounds in the absence of some suggestion of equivalence and especially in view of the disclosures of Richardson that phenols and the like are unsuitable and of Monroe that at least certain hydroxy-containing compounds are ineffective as olefin polymerization inhibitors in the presence of polymerization catalysts.

Finally, the Ecke disclosure does not focus on inhibiting polymerization of unsaturated hydrocarbons, as properly asserted by appellants, and in any event teaches the ineffectiveness of specific phenols and amines known to be suitable as gasoline antioxidants. In this sense this patent is inconsistent with the other secondary teachings and does not provide a basis for substituting the very specific phenols there disclosed for the nitrogen agents of Benesi.

▮▮ The rejection here runs afoul of a basis mandate inherent in § 103— that "a piecemeal reconstruction of the prior art patents in the light of appellants' disclosure" shall not be the basis for a holding of obviousness. In re

Rothermel, 47 CCPA 866, 870, 276 F.2d 393, 396 (1960). "It is impermissible within the framework of section 103 to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art." In re Wesslau, 53 CCPA 746, 750, 353 F.2d 238, 241 (1965). We think this has been done here.

We appreciate the relative ease with which one can clip into such an error, especially where, as here, the primary reference addresses the same problem as appellants and solves it using merely a different chemical agent. However, we are satisfied that when the secondary references are viewed in their entirety, with due consideration given to what they fail to disclose and what they disclose as undesirable, it is evident that the proposed modification of the primary reference would not have been obvious to one of ordinary skill in the art at the time the invention was made.

For the reasons set forth, we reverse the decision of the Board of Appeals.

Reversed.