854 F.2d 1327
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
TEXAS INSTRUMENTS INCORPORATED, Appellant,
v.
UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,
and
Samsung Company, Limited and Samsung Semiconductor &
Telecommunications Co., Limited, Intervenors.
 No. 87-1627.
 United States Court of Appeals, Federal Circuit.
 July 12, 1988.
 
 Before FRIEDMAN, BISSELL and MAYER, Circuit Judges.
 BISSELL, Circuit Judge.
 
 DECISION
 
 1
 Texas Instruments Incorporated (TI) appeals from that portion of the final decision of the United States International Trade Commission (ITC) holding (1) claims 12-15 and 17 of United States Letters Patent No. 4,043,027 ('027) invalid and not infringed by Samsung Company's (Samsung) encapsulating process, and (2) United States Letters Patent No. 3,541,543 ('543) unenforceable due to inequitable conduct before the United States Patent and Trademark Office (PTO). We reverse-in-part, vacate-in-part, and remand.
 
 OPINION
 I. The '543 Patent
 
 2
 The portion of the ITC's determination regarding the unenforceability of the '543 patent has already been vacated for mootness in a published order. Texas Instruments Inc. v. United States Int'l Trade Comm'n, No. 87-1627 (Fed.Cir. July 6, 1988).
 
 II. The '027 Patent
 
 3
 A. The Disposition Below.
 
 
 4
 The claimed invention is a process for encapsulating semiconductor transistors and other electrical components in plastic packaging. In 1986 TI filed a complaint with the ITC charging nineteen different parties with violating United States tariff laws by importing 256K and 64K dynamic random access memory devices (hereinafter chips). TI alleged that the chips were encapsulated outside the United States by manufacturing processes that infringed numerous TI patents, including the '027 process patent. The administrative law judge (ALJ) in the initial determination found no violation of sections 337 and 337a, 19 U.S.C. Secs. 1337, 1337a (1982 & Supp. IV 1986), with respect to the '027 patent. She did, however, determine that claims 12-15 and 17 of the '027 patent were invalid for (1) lack of utility due to inoperativeness under 35 U.S.C. Sec. 101 (1982); (2) lack of enablement under 35 U.S.C. Sec. 112; (3) obviousness under 35 U.S.C. Sec. 103 (1982 & Supp. IV 1986); and (4) double patenting. See In re Certain Dynamic Random Access Memories, Components Thereof and Products Containing Same, Inv. No. 337-TA-242, slip op. at 142, 150, 152 (Int'l Trade Comm'n May 21, 1987) (hereinafter DRAM ). The ALJ also found that the Samsung process did not infringe the claims at issue either literally or under the doctrine of equivalents. Upon review, the ITC vacated that portion of the initial determination holding the '027 patent invalid for double patenting. Because the ITC determined not to review the ALJ's remaining findings and conclusions with respect to the '027 patent, they became final on September 21, 1987. We address each issue seriatim.
 
 B. Inoperativeness, 35 U.S.C. Sec. 101
 
 5
 TI contends that the ALJ made a critical error of law in interpreting claims 12-15 and 17 of the '027 patent to require that the molten plastic flow into the mold in a particular flow pattern as depicted by the swirling arrows in Figure 5 and described in the specification at column 5, lines 41-50. We agree. There is no dispute that when the '027 patent issued in 1977, the inventors incorrectly believed that their claimed invention worked in the way depicted in Figure 5. See DRAM, slip op. at 130-31. However, an inventor need not understand how or why his claimed invention works as long as the claimed invention can be practiced by one skilled in the art. Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1570, 219 USPQ 1137, 1140 (Fed.Cir.1983). Conversely, if the inventor claims a misconception, the patent must be held invalid. Raytheon Co. v. Roper Corp., 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), cert. denied, 469 U.S. 835 (1984).
 
 
 6
 Here, the ALJ held that the claims at issue incorporated an "erroneous theory of how gate location affects plastic flow." DRAM, slip op. at 152. In other words, she concluded that the encapsulation process disclosed in the '027 patent did not work as described and required by the claims at issue. Based on this claim interpretation, the ALJ found that the claims at issue lacked utility under section 101 because they contained inoperative language. Id. at 136-37, 152.
 
 
 7
 The ALJ's finding is clearly erroneous because it is based on improper claim construction. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1268-69, 229 USPQ 805, 810 (Fed.Cir.1986), cert. denied, 107 S.Ct. 875 (1987) (stating that utility requirement under section 101 is reviewed as a question of fact). The claims at issue do not require that the flow pattern depicted in Figure 5 be present. For example, claim 12 calls for a particular relationship between the location of the gate and the semiconductor device whereby the fluid will not directly engage the device at high velocity. There is no expressed incorporation in the claim of the incorrect theory that the plastic must enter and flow from bottom to top as depicted in Figure 5 of the patent. See Smith v. Snow, 294 U.S. 1, 11 (1935) (refusing to limit the claim to that shown in the specification and drawings). The ALJ's analysis violates a basic rule of claim construction--that claims are to be construed so as to preserve their validity. See, e.g., ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577, 221 USPQ 929, 932 (Fed.Cir.1984). Accordingly, the ITC's final determination on this issue is reversed.
 
 
 8
 C. Enablement, 35 U.S.C. Sec. 112.
 
 
 9
 Because the ALJ committed the same errors of claim construction delineated above, we reverse that portion of the ITC's final determination holding claims 12-15 and 17 of the '027 patent invalid under section 112 for nonenablement. See DRAM, slip op. at 137, 152.
 
 
 10
 D. Obviousness, 35 U.S.C. Sec. 103.
 
 
 11
 The ALJ also held claims 12-15 and 17 of the '027 patent invalid under section 103. See DRAM, slip op. at 142, 152. This court has stated that once the claims of a patent have been improperly construed, that improper construction permeates, and typically disables, the entire remaining legal analysis. See Moeller v. Ionetics, Inc., 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir.1986) (stating that improper claim construction can distort an entire infringement analysis). That principle is applicable in this case. The dramatic influence of the ALJ's misconstruction of the claims on her obviousness analysis is illustrated by her repeated reference to the fact that what is claimed does not work. DRAM, slip op. at 144, 146, 147, 148, 149, 150, 152. For example, the ALJ opines "[t]o the extent that what is claimed in the '027 patent will work at all, it would have been obvious to one with ordinary skill in the art in 1963 to transfer mold semiconductor devices in this way." Id. at 150. Thus, we vacate the ALJ's obviousness analysis as being too tainted by improper claim construction for proper review, and remand for further proceedings consistent with this opinion.
 
 
 12
 On remand, we caution the ITC that claims as a whole must be compared with the prior art. Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 449, 230 USPQ 416, 420 (Fed.Cir.1986), cert. denied, 108 S.Ct. 85 (1987). It is not proper to dissect claims and reconstruct them in piecemeal fashion by picking and choosing from among the prior art references using the patent as a blueprint. In re Kamm, 452 F.2d 1052, 1056-57, 172 USPQ 298, 301-02 (CCPA 1972). In determining obviousness, therefore, the inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole. Hartness Int'l, Inc. v. Simplimatic Eng'g Co., 819 F.2d 1100, 1108, 2 USPQ2d 1826, 1832 (Fed.Cir.1987). Further, if prior art references require selective combination to conclude that an invention would have been obvious, there must be some teaching or suggestion in the references that would support their use in combination. Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 293, 227 USPQ 657, 664 (Fed.Cir.1985), cert denied sub nom., 475 U.S. 1017 (1986). Here, the ALJ matched elements from numerous prior art references with elements in the claims but provided no guidance on how this prior art rendered the claimed invention obvious.
 
 
 13
 The ALJ also erred in not considering the extensive evidence of secondary considerations. After acknowledging that there was a need for a new type of chip packaging, that others were working on the same problem, and that TI was the first to bring this product to the market, the ALJ improperly rejected the weight of these secondary considerations because "the claims of the patent simply do not cover what actually occurred." DRAM, slip op. at 150.
 
 
 14
 E. Infringement.
 
 
 15
 Given our above conclusions, we vacate the infringement analysis as being too tainted for proper review by this court and remand for further proceedings consistent with this opinion.
 
 CONCLUSION
 
 16
 We reverse the ITC's holding that claims 12-15 and 17 of the '027 patent are invalid under sections 101 and 112. We vacate those portions of the ITC's determination concluding that the '027 patent was obvious and not infringed, and remand for further proceedings consistent with this opinion.
 
 COSTS
 
 17
 Parties are to bear their own costs.