**LeRoy LaSALLE and A. C. Company of South Louisiana, Plaintiffs-Appellants,**

v.

**CARLTON'S LAYDOWN SERVICE, INC., Defendant-Appellee.**

**No. 81–3526.**

United States Court of Appeals, Fifth Circuit.

July 16, 1982.

Rehearing Denied Sept. 23, 1982.

Gunn, Lee & Jackson, C. Donald Gunn, Houston, Tex., for plaintiffs-appellants.

Pravel, Gambrell, Hewitt, Kirk & Kimball, Coke Wilson, Houston, Tex., for defendant-appellee.

Before GEE and JOHNSON, Circuit Judges, and VAN PELT *, District Judge.

GEE, Circuit Judge:

This is an appeal from a dismissal of a patent infringement claim. The Teague patent owned by LeRoy LaSalle and A. C. Company of South Louisiana relates to a "wire-line laydown machine" designed to be used with drilling rigs. This machine transfers a joint of pipe from its horizontal position on pipe racks located adjacent to a drilling rig to a vertical location on the rig, ready for use. The BC machine owned by Carlton C. Woodson, III, of Carlton's Laydown and Pickup Machines, Inc., is used for the same purpose as the patented Teague device. The BC device differs from the Teague machine in two respects:

1. The BC device uses a single pipe trough to cradle and transport the pipe whereas the Teague device calls for two separate and independently operated pipe carriages.

2. The BC device employs only a single cable and winch for moving its single pipe carrier along the support cable, whereas the Teague device requires two cables and two winches for moving the two carriages independently of each other.

* District Judge of the District of Nebraska, sitting by designation.

The district court, dealing solely with the question of patent infringement and not patent validity, found no literal infringement because the BC device lacks two of the structural components required for the Teague patent. The court also found no infringement under the doctrine of equivalents on two grounds:

1. The BC device "does not operate in substantially the same way" as the Teague device.

2. File wrapper estoppel limits the claims under the Teague patent.

LaSalle appeals this dismissal, claiming that the district court applied erroneous rules of construction in determining whether the Teague patent had been infringed. The construction of a patent is a matter of law and, therefore, this court is not bound by the clearly erroneous factual review of Federal Rules of Civil Procedure 52(a) in construing the patent in question. *Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 867 (5th Cir. 1973), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973).

A patent is not to be protected against "any device that comes within the broad sweep of its claims," rather, "infringement is to be found only if the reference to the drawings and specifications of the patent can be read upon the accused device." *Marvin Glass & Associates v. Sears, Roebuck & Company*, 448 F.2d 60, 62 (5th Cir. 1971). The factual question presented here is whether the Teague patent specified two carriages and two cables. If so, literal infringement cannot exist because the BC device employs only one carriage and one cable. A reading of Claims 8 and 9 of the Teague patent shows that the Teague device requires two independently movable carriages and two controlled cables.[1] The Teague patent describes a spaced pair of independently movable carriages having individual control lines and winches for transporting pipe between the pipe rack and the derrick floor. The independent movement of the separate carriages cannot be accomplished without individu-

---

1. 8. Apparatus for handling pipe wherein the pipe is transported between a pipe rack and another location comprising: a cable; means forming spaced apart pipe receiving carriages; means mounting said spaced apart pipe receiving carriages for longitudinal movement on said cable; means for moving at least one of said carriage on said cable; and means anchoring one end of said cable; means controlling the tension in said cable; said cable adapted to be positioned with part of it disposed in overlying relationship with respect to the pipe rack and part of it being disposed in close proximity to the recited another location; said means for moving said carriages including a second cable, said second cable being attached to at least one of said carriages; and, means for moving said second cable so as to enable positioning of a carriage to which said cable is attached; means forming at least one of said pipe receiving carriages into a trough for bottom supporting a pipe, said trough being upwardly opening with downwardly covering side walls, and further including a vertically disposed bulkhead for abuttingly receiving the end of a pipe joint thereagainst.

9. Apparatus for handling pipe wherein the pipe is transported between a pipe rack and another location comprising:
   (a) a cable;
   (b) means forming a pair of pipe receiving carriages;
   (c) means mounting said pipe receiving carriages for longitudinal movement along said cable so that they may support a pipe of specified length;
   (d) moving means for moving at least one of said carriages along said cable;
   (e) means anchoring one end of said cable;
   (f) means controlling the tension in said cable to raise or lower said cable;
   (g) said cable adapted to be positioned with part of it disposed in space in overlying relationship with respect to the pipe rack and part of it extending upwardly to be disposed in close proximity to the recited another location so that said cable enables raising or lowering movement of said carriages;
   (h) said moving means including a second cable;
   (i) said second cable being attached to at least one of said carriages;
   (j) means for moving said second cable to selectively position the carriage to which said cable is attached; and
   (k) means forming at least one of said pipe receiving carriages for supporting a pipe, and further including means for temporarily supporting a pipe on said pipe receiving carriages during raising or lowering movement of the pipe along said cable.

al control cables and winches. The file history demonstrates that independently movable dual carriages are the salient feature distinguishing Teague's device from the prior art which utilizes unitary carriage.[2] Because the BC device has the unitary carriage moved by a single control line, the structural differences between the two devices are clear and prevent a claim of literal infringement.

Patents, however, are not interpreted by the literal scope of their claims only. A patent would be virtually worthless if it did not protect against devices which incorporate only minor and insignificant variations in structure. The courts have therefore developed a doctrine of equivalents to protect the patentee from devices that differ merely in "name, form or shape" from the patented invention but "perform substantially the same function in substantially the same way to obtain the same result." *Ziegler,* supra at 868; *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). To decide this question, we must review the operation of both devices.

In operation of the Teague apparatus, a joint of pipe is transferred from the pipe rack to a position adjacent to the rig floor by moving the front and rear carriages simultaneously up the support lines by pulling their respective control cables by their individual winches. Then, with the upper end of the pipe secured to the derrick elevators, the pipe is lifted from a horizontal to a vertical position by simultaneously lifting the upper end of the pipe with the rig elevators while advancing only the rear carriage along the support cable until it is adjacent to the front carriage. In this operation, the rear carriage is moved independently of the front carriage. Simultaneous movement of the elevators and the rear carriage is required to move the pipes from the horizontal to the vertical position or vice versa. This simultaneous movement requires close coordination between the driller on the rig floor who operates the elevators and the operator of the pipe handling apparatus who advances the rear carriage in concert with the movement of the elevator. If the rear carriages move faster than the elevators, the pipe could be shoved through the derrick and out the far side; if the rear carriages move slower than the elevators, it is possible that the rear end of the pipe may be pulled out of the rear carriage and the pipe dropped against the edge of the rig floor. In short, the pipe handling apparatus alone does not move the pipe into a vertical position; cooperation with rig elevators is required to lift or lower the pipe into or from a vertical position.

The BC machine also transfers the pipe from the pipe rack to a position adjacent to the rig floor. When the unitary carriage has reached the upper end of the support cable, the pipe is lifted out of the trough into the derrick by pulling the upper end with the derrick elevators and dragging the rear end of the pipe along the parked trough. The trough of the BC machine remains virtually motionless in the parked position adjacent to the rig floor while the operator of the rig elevators, acting *independently,* lifts the pipe out of the trough. It is at this critical point—that of the interaction between the pickup and the laydown machine and the operation of the rig elevators—that the basic difference in the operation

2. Applicant Teague argued relative independent carriage movement as the feature distinguishing Teague from the Schmertz patent, U. S. Patent No. 890,306:

"As fully described in the present specification and as clearly illustrated in figures 4–6, the two pipe carrying means must respectively be capable of independent movements which is not at all possible with the Schmertz apparatus. It should also be noted that the Chandler patent simply fails to supply this concept inasmuch as the two carriages E are similarly linked together by the coupling bars shown generally at W so that these two carriages are also incapable of independent movement with respect to one another. Thus, it is submitted that neither of the two references of record even suggest—much less teach—the concept of having two pipe carrying devices which are independently movable along a winch cable as this cable is selectively loosened or tightened." Certified File Wrapper, p. 33, DX 13.

tion of the BC machine is most apparent. No simultaneous movement or coordination is required between the two operators in removing the pipe from the BC machine. The pipe is raised to vertical position by the power of the derrick elevators only, and the rear end of the pipe is controlled only in the sense that it is dragged along the trough. With the unitary trough, the pipe cannot be shoved through the derrick or pulled out of the rear carriage and dropped against the side of the rig floor.

The difference in operation is critical because the Teague device is not a pioneer patent. The Teague machine is only one of many in a crowded field of numerous devices for lifting and handling pipe and Teague was not the first to make a wireline laydown machine. In *Studiengesellschaft Kohle v. Eastman Kodak Company*, 616 F.2d 1315, 1324 (5th Cir. 1980), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980), we stated: "The nature of the invention itself affects the range of equivalents. A 'pioneer' patent, which covers a function never performed before, receives a much broader protection than a patent which merely makes minor improvements upon existing technology. See cases cited in *Ziegler v. Phillips Petroleum Co.*, 483 F.2d at 869–70." What constitutes equivalency "must be determined against the context of the patent, the prior art and the particular circumstances of the case." *Graver, supra*, 339 U.S. at 609, 70 S.Ct. at 856. Because the Teague patent is narrow and because the BC device does not work in "substantially the same way" as the Teague machine, we find no patent infringement under the doctrine of equivalents.[3]

AFFIRMED.

3. The district court found no patent infringement on both this ground and on the basis of file wrapper estoppel. Because we find the machines do not operate in substantially the same way, we need not address the issue of file wrapper estoppel.