**ACS HOSPITAL SYSTEMS, INC.,**
**Appellant/Cross-Appellee,**

v.

**MONTEFIORE HOSPITAL and Wells**
**National Services Corporation,**
**Appellees/Cross-Appellants.**

Appeal Nos. 83–1121, 83–1132.

United States Court of Appeals
Federal Circuit.

April 27, 1984.

Frank J. Benasutti, Philadelphia, Pa., argued for appellant.

David J. Cushing, of Washington, D.C., argued for appellees. With him on the brief was Darryl Mexic, Washington, D.C.

Before MILLER and SMITH, Circuit Judges, and RE, Judge.*

EDWARD S. SMITH, Circuit Judge.

In this patent case, ACS Hospital Systems, Inc. (ACS), appeals from a judgment of the U.S. District Court for the Western District of Pennsylvania, 564 F.Supp. 330,

---

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

holding U.S. patent No. 4,183,057, issued to Sonnenberg (the Sonnenberg patent), invalid as obvious under 35 U.S.C. § 103 (1976) and not infringed. Montefiore Hospital and Wells National Services Corp. (Wells) cross-appeal from the district court's denial of their motion for attorney fees. The judgment is reversed with respect to invalidity and affirmed with respect to non-infringement. With respect to Wells' cross-appeal from the denial of attorney fees, the judgment is affirmed.

### Background

ACS's Sonnenberg patent claims a rental television system comprising a key operated actuating switch, an override switch, and a signal light to indicate that the override switch has been actuated. When the key switch is in the "on" position, the television operates normally. For rental use, the key switch is placed in the "off" position by a key operator. In order to rent the television, the viewer depresses the override switch which enables the television to operate normally without the necessity of turning on the key operated switch. When the override switch has been activated the indicator signal is illuminated, signaling that the television has been rented. Claim 1 is representative:

A television system constructed for rental use, the television system comprising:

actuating means including a key operated switch switchable between an off position for preventing normal operation of the television and an on position for enabling the television to be operated;

override switching means capable of being switched from a normal position to an actuated position for overriding said key operated switch when in its off position and enabling the television to be operated; and said override switching means when switched in to [sic] its

actuated position remains in said position until said key operated switch is switched into its on position; and

indicating means for providing an indicating signal when said override switching means has been switched into its actuated position.

### Validity

The trial court held the claims of the Sonnenberg patent invalid under section 103. While the trial court's opinion deals predominantly with infringement, the court purported to apply the standards articulated in *Graham v. John Deere Co.*[1] in determining the issue of validity. In concluding that the Sonnenberg patent is invalid under section 103, the district court relied on override switches generally and ACS's "COMPU–TEL" fully automated television rental system as prior art.

The court below stated that "the overriding of switches by providing an alternative path for current to actuate an applicance is a commonly practiced technique well known in the art prior to Sonnenberg's patent." It held that his claim 1 is therefore invalid as obvious. The trial judge adopted Wells' expert's description of ACS's COMPU–TEL system and held the Sonnenberg patent invalid as an attempt by ACS to "monopolize *all* systems of enabling a hospital patient to view television * * without the aid of an attendant." (Emphasis in original.) He commented that "[t]he statutory presumption [of validity] of 35 U.S.C. 282 is entirely annihilated by the indisputable facts in the record."

### Presumption of Validity

As an initial matter, we hold that the trial court's treatment of the presumption of validity is incorrect as a matter of law. The presumption is *never* annihilated, destroyed, or even weakened, regardless of

---

**1.** *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966).

what facts are of record.[2] Rather, it is a clear statutory procedural device which assigns to the party asserting invalidity the burden of proving invalidity.[3]

> A patent shall be presumed valid. * * The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.[4]

The burden of persuasion is, and remains always, on the party asserting invalidity.[5] In the present case this error is not harmless. The district court's holding of invalidity has been shown, on the entire record, to have been reached on the basis of *both* clearly erroneous findings of fact and misapplication of the law.[6]

### Section 103

This court has in recent months issued a number of opinions addressing the analysis of obviousness under section 103[7] and those opinions provide a comprehensive guide to analysis. We hold that the trial court's analysis of obviousness is inade-quate under *Graham*[8] to sustain a holding of invalidity under section 103. However, the trial court's opinion contains sufficient findings of fact, supported in the record, to enable us to review the conclusion below that the Sonnenberg patent is invalid.

### Scope and Content of the Prior Art.

In determining the scope and content of the prior art, the trial court found that override switches generally were well known in the art. It also found that ACS's COMPU–TEL system was within the prior art under section 102(g). The district court did not in its opinion rely on any other prior art reference in determining whether the claimed invention would have been obvious under section 103.

Five U.S. patents[9] are cited in the Sonnenberg patent as prior art. Further, the parties refer to the "Western New York Hospital" rental television system as prior art. While the trial judge made no mention in his opinion of these additional

---

2. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875–76 (Fed.Cir. 1983).

3. *Id.*

4. 35 U.S.C. § 282 (1976).

5. *Stevenson v. U.S. Int'l Trade Comm'n*, 612 F.2d 546, 551, 67 CCPA 109, 115, 204 USPQ 276, 281 (1979); *Solder Removal Co. v. U.S. Int'l Trade Comm'n*, 582 F.2d 628, 632–33, 65 CCPA 120, 125–26, 199 USPQ 129, 132–33 (CCPA 1978). *See also Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 220 USPQ 193 (Fed.Cir.1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 220 USPQ 97 (Fed.Cir.1983); *Stratoflex*, 713 F.2d at 1534, 218 USPQ at 875–76; *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 773–74, 218 USPQ 781, 790 (Fed.Cir.1983).

6. *Cf. Medtronic*, 721 F.2d at 1566, 220 USPQ at 99 (errors in decisional approach considered harmless).

7. *In re Sernaker*, 702 F.2d 989, 217 USPQ 1 (Fed.Cir.1983); *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 217 USPQ 193 (Fed.Cir. 1983); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 217 USPQ 1281 (Fed.Cir.1983); *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed.

Cir.1983); *Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 218 USPQ 698 (Fed.Cir.1983); *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 218 USPQ 865 (Fed.Cir.1983); *Stratoflex*, 713 F.2d 1530, 218 USPQ 871.

8. *Graham*, 383 U.S. at 17–18, 86 S.Ct. at 693–694, 148 USPQ at 467, provides, in pertinent part:

> " * * * [Section] 103 * * * lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * * "

9. Norris, U.S. patent No. 2,856,474; Townsend, U.S. patent No. 3,188,384; Sargent, U.S. patent No. 3,335,421; Daniel, U.S. patent No. 3,631,444; and Kosco, U.S. patent No. 3,886,302.

references, on the basis of the record before us, they each constitute prior art relative to the Sonnenberg patent. We hold that the trial court's limited assessment of the prior art was clearly erroneous in that the court below failed to find that these additional references are within the scope and content of the prior art. These errors, however, have not been shown to have influenced the trial court's judgment in this case and, accordingly, we consider them harmless.

*Differences.*

■ With respect to the differences between the claimed subject matter and the prior art, the district court gave claim 1 of the Sonnenberg patent an extremely broad construction. It adopted the opinion of Wells' expert that the COMPU–TEL system contains every feature of claim 1. Hence, the court below found no significant differences between the claimed subject matter and the prior art. We hold that finding to be clearly erroneous. In addition, that finding reflects an erroneous construction of the claims.

The trial court in its discussion of obviousness, rather than ascertaining the differences between the claimed subject matter and the prior art, focused on the differences between the Wells and the ACS systems. In so doing, it adopted Wells' expert's explanation of the differences between claim 1 and the Wells system—differences relating to literal infringement, not validity. We conclude that the trial court erred in adopting Wells' expert's interpretation of claim 1.

Differences between the prior art and the claimed invention are apparent from the record. First, while override switches are used in a wide variety of applications, the examples of override switches cited by the district court are not relevant to the claimed subject matter as a whole—television rental systems. The district court made no attempt in its opinion to identify the differences between the override

switching examples that it cited and the claimed subject matter.

Second, the record discloses that COMPU–TEL is a fully automated television rental system whereas the claimed invention involves human monitoring and control. While COMPU–TEL and the claimed invention both exhibit certain switching elements, the functions of the switching elements in the two systems are different. The fully automated operation of the COMPU–TEL system does not involve overriding a locked key switch. The patient switch in the COMPU–TEL system functions to actuate the television as well as to initiate billing. The override switching means claimed in the Sonnenberg patent, on the other hand, functions to provide an alternative current path to the locked key switch and to actuate the indicator light.

Third, the prior art of record that the court did not discuss also differs significantly from the claimed subject matter. The five patent references cited in the Sonnenberg patent involve a variety of lock, metering, and control systems. None of them, however, employs an override switching mechanism to overcome a key operated actuating switch. The Western New York Hospital system involves a three position key switch. Yet, that system differs from the claimed subject matter in that it too does not employ override switching means.

Hence, we hold the trial court's assessment, that there are no differences between the claimed subject matter and the prior art, was clearly erroneous.

*Level of Ordinary Skill and Secondary Considerations.*

Additionally, the court below made no express finding with respect to the level of ordinary skill in the art. The trial court's analysis, however, clearly indicates that the level of skill was considered to be quite low. We interpret the court's findings as fixing the level of ordinary skill in the art as that of a layman. That finding has not

been shown to be clearly erroneous. The court made no findings with respect to secondary considerations.

*Claim Construction.*

As noted above, the trial court's opinion reflects an extremely broad construction of the claims. Contrary to the district court's construction of the claims, the Sonnenberg patent does not claim *"all* systems of enabling a hospital patient to view television normally under his own power without the aid of an attendant." (Emphasis in original.) The court ignored express claim limitations governing the function of the switching means.

 Claims are to be read and construed in light of the specification and the prosecution history of the patent.[10] Further, claims should be so construed, if possible, as to sustain their validity.[11] Applying these principles, the claims of the Sonnenberg patent should be given a far more limited construction than that given by the district court in holding the claims invalid. The claims are limited to a system in which override switching means function to override a key switch when in its "off" position, enabling the television to operate normally. The Sonnenberg patent does not claim *"all"* hospital rental systems capable of operation without an attendant. Claim construction is a question of law.[12] We hold

that the trial court's construction of the claims is incorrect as a matter of law.

*Obviousness.*

Turning now to the determination of obviousness under section 103, we conclude that none of the references, either alone or in combination, would have disclosed or suggested to one of ordinary skill in the art the use of override switching means in a television rental system. The trial court's heavy reliance on the widespread use of override switches appears to be no more than hindsight reconstruction of the claimed invention. The court below identified no source, other than the Sonnenberg patent itself, for the suggestion to use override switching means in a television rental system.

 Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination.[13] Under section 103, teachings of references can be combined *only* if there is some suggestion or incentive to do so.[14] The prior art of record fails to provide any such suggestion or incentive. Accordingly, we hold that the court below erred as a matter of law in concluding that the claimed invention would have been obvious to one of ordinary skill in the art under section 103.

**10.** *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1570–71, 219 USPQ 1137, 1140–41 (Fed.Cir.1983); *Autogiro Co. v. United States,* 384 F.2d 391, 397–99, 181 Ct.Cl. 55, 63–66, 155 USPQ 697, 702–04 (1967).

**11.** *Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 937 n. 5, 220 USPQ 481, 485 n. 5 (Fed.Cir.1983); *Klein v. Russell,* 86 U.S. (19 Wall) 433, 466, 22 L.Ed. 116 (1874); *Turrill v. Michigan S. & N.I. R.R.,* 68 U.S. (1 Wall) 491, 510, 17 L.Ed. 668 (1864).

**12.** *Autogiro,* 384 F.2d at 397–99, 181 Ct.Cl. at 63–66, 155 USPQ at 702–04; *LaSalle v. Carlton's Laydown Serv., Inc.,* 680 F.2d 432, 216 USPQ 276 (5th Cir.1982); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 616 F.2d 1315, 206 USPQ 577 (5th Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473, 208 USPQ 88 (1980).

**13.** *Orthopedic Equip. Co.,* 702 F.2d at 1012, 217 USPQ at 199; *cf. In re Samour,* 571 F.2d 559, 563, 197 USPQ 1, 4 (CCPA 1978) (noting the rule in the § 103 context and declining to extend that rule to § 102(b) rejections); *Corometrics Medical Sys., Inc. v. Berkeley Bio-Engineering, Inc.,* 193 USPQ 467, 475 (N.D.Cal.1977).

**14.** *In re Rinehart,* 531 F.2d 1048, 189 USPQ 143 (CCPA 1976); *In re Regel,* 526 F.2d 1399, 188 USPQ 136 (CCPA 1975); *In re Avery,* 518 F.2d 1228, 186 USPQ 161 (CCPA 1975); *In re Imperato,* 486 F.2d 585, 179 USPQ 730 (CCPA 1973); *In re Andre,* 341 F.2d 304, 52 CCPA 1019, 144 USPQ 497 (1965).

### Infringement

The trial court found that the Wells system does not infringe the claimed invention, either literally or under the doctrine of equivalents. Once again adopting the testimony of Wells' expert, the court below found that "the Wells system does not contain the element of overriding a locked switch." The district court also found differences between the ACS system and the Wells device with respect to the mechanism and circuitry of the actuating switch as well as with respect to the indicator light.

■ These latter findings, however, will not support a finding of no infringement. The claims of the Sonnenberg patent are not limited to a specific switching mechanism or to specific indicator light circuitry. The district court appears to have compared the Wells system with ACS's commercial product, rather than with the claims of the Sonnenberg patent. Infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention.

The district court's failure to supply more comprehensive findings of fact compounds the difficulty of appellate review, particularly in view of the complexity of the technical subject matter of this appeal. Findings of fact are to be construed liberally in support of a judgment. Confined to the trial court's limited findings, we are forced to draw from the facts found those inferences that are necessary to support the ultimate finding that the Sonnenberg patent is not infringed by Wells.[15]

■ In this endeavor we are not ourselves finding those facts which the trial court failed to set out for us. As an appellate court, we lack the power to perform that exercise. Where the trial court fails to make findings, the judgment will normally be vacated and the action remanded for appropriate findings to be made.[16] Where a full understanding may be had without the aid of separate findings, however, we recognize a narrow exception to that general rule.[17]

■ The ultimate finding of fact in a case, whether initially by the trial court, or as affirmed on appeal, rests on the same underpinnings, *i.e.*, the necessary subsidiary facts, supported by evidence of record, that lead to that ultimate finding. Where the district court has not misapplied the controlling legal standards in its evaluation of the evidence, its ultimate finding as well as the subsidiary findings upon which the ultimate finding necessarily depends, is subject to review on appeal under the clearly erroneous standard of Fed.R.Civ.P. 52(a).[18] We examine the record in order to review the trial court's judgment, and the findings it made or necessarily had to have made to support that judgment and, thus, to conclude the controversy at this stage without unnecessary further expenditure of judicial resources, if possible.

### The Sonnenberg Claims.

■ The Sonnenberg patent claims a rental television system having key operated actuating means capable of being overridden by an override switching means. An indicating means signals that the override switching means has been actuated. Once overridden, the switches and the indicator light remain in their overridden positions until the key operated switch is switched on, resetting the override switching and indicating means.

### The Accused Infringing Device.

The Wells device also contains each of the three physical elements of claim 1 of

**15.** 5A J. MOORE, J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 52.06[1] (2d ed. 1984).

**16.** *Pullman-Standard v. Swint,* 456 U.S. 273, 292 n. 22, 102 S.Ct. 1781, 1791 n. 22, 72 L.Ed.2d 66 (1982); 5A MOORE'S FEDERAL PRACTICE ¶ 52.06[2].

**17.** *See* 5A MOORE'S FEDERAL PRACTICE ¶ 52.06[2] n. 4 and cases cited therein.

**18.** *Cf. Pullman-Standard,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66.

the Sonnenberg patent: (1) a key operated actuating switch; (2) a remote control actuating switch; and (3) an indicator light. The district court, however, found that the Wells device does not contain the claimed limitation of overriding a locked switch—a difference in function.

The Wells device is a modified version of a standard hospital/hotel/motel television receiver. The keylock in the Wells system actuates 5 switches: S1XA; S1XB; S1B; S1C; and S1D [Fig. 1].

Fig. 1
Wells Device
Keylock Assembly As Manufactured

In the Wells device, the jumper wires, provided by the manufacturer on switches S1B and S1C, are not removed. [Fig. 2.]

Fig. 2
Wells Device
Rear of Key Switch Showing Jumpers

Switches S1B and S1C are shorted out by those jumper wires, rendering those switches electrically inoperable.

Additionally, switch S1D [Fig. 1] is "replaced" by relay RL–2 [Fig. 3] of the Wells remote control circuit.

Fig. 3
Wells Device
Schematic of Remote Control
and Key Switch Assemblies

Relay RL–2 is connected in parallel with switch S1D and one of the leads to switch S1D is cut between switch S1D and the connection of the lead to relay RL–2 [Fig. 3]. Thus, the circuit through switch S1D is broken, rendering that switch electrically inoperable.

Unlike switch S1D which it replaces, relay RL–2 is not controlled by the key switch. Rather, switch S1 [Fig. 3], located on the remote control unit, operates relay RL–2 in the Wells device. When S1 is not depressed, relay RL–2 remains normally closed. When switch S1 is depressed, the coil in relay RL–2 is energized causing relay RL–2 to open. Similarly, switch S1D, which relay RL–2 replaces, was normally closed when the television was not rented and was opened by turning the key switch to rent the television.

Switches S1B, S1C, and S1D, therefore, are disabled in the Wells device. The key switch operates only two switches—S1XA and S1XB [Fig. 1]—which control the delivery of power to the television receiver. When these switches are closed [positions 2 and 3] [Table 1], power is delivered to the tuner; when these switches are open [position 1] [Table 1], the circuit is broken and no power reaches the tuner.

| KEY SWITCH & PROGRAMMING TAB POSITION TABLE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| AS MANUFACTURED | | | | | | | | |
| MODE | KEYLOCK SWITCH | FUNCTION | CLOSED SWITCHES | OPEN SWITCHES | PROGRAMMING TABS | CHANNEL SELECTOR | CLOSED SWITCHES | OPEN SWITCHES |
| 1 | (key switch) | TOTAL OFF | NOT APPLICABLE | SX1A SX1B | NOT APPLICABLE | NOT APPLICABLE | NOT APPLICABLE | NOT APPLICABLE |
| 2 | (key switch) | STOP ON FREE & PAY CHANNELS ONLY | SX1A SX1B S1B S1C | S1D | (tab) | WILL STOP | S5 | |
| | | | | | (tab) | WILL SKIP | S4A S4B | S5, S4A, S4B, |
| | | | | | (tab) | WILL STOP | | |
| 3 | (key switch) | STOP ON FREE CHANNELS ONLY | SX1A SX1B S1B S1C S1D | | (tab) | WILL SKIP | S5 | |
| | | | | | (tab) | WILL SKIP | S4A S4B | |
| | | | | | (tab) | WILL STOP | | S5, S4A, S4B. |

## Table I

As manufactured, when the key switch of a standard receiver is in position 2 [Table 1], switch S1D is open and the television operates normally. Position 2 functions as an "on" setting in the standard receiver. In the Wells device, however, switch S1D [Table 1] has been disconnected and it has been replaced by relay RL–2. Relay RL–2 cannot be opened by manipulation of the key switch, as was switch S1D. Thus, the receiver cannot be actuated merely by turning the key switch to position 2 in the Wells device.[19] Switch S1 opens relay RL–2. The Wells receiver can be made fully operable only by depressing switch S1 [Fig. 3] while master on-off switches S1XA and S1XB are closed—position 2 or 3 [Table 1].

When the key switch is in position 1, power is interrupted and depressing actuating switch S1 will not actuate the receiver. The Wells key switch performs the same function in position 2 as in position 3. In both of those positions, while power is supplied to the tuner, the actuating switch S1 must be depressed in order to actuate the television. Thus, switch S1 does not override the key switch of the Wells device.[20] Switch S1 and the key switch are electrically independent in the Wells device [Fig. 4].

19. It appears that had RL–2 and S1D been wired in series, instead of in parallel with S1D disabled, the Wells device would exhibit the claimed "on" function.

20. Our assessment of the operation of the Wells device is based on the trial court's findings and on the documentary and testimonial evidence of record. It appears that only switches S1XA and S1XB are controlled by the key switch. Thus, our analysis supports the trial judge's implication that there is no functional difference between positions 2 and 3 of the key switch. The above analysis assumes that the key switch does not operate some third circuit that is actuated in either position 2 or position 3, but not both. We are aware of no evidence that such a third circuit fulfills the role of the key switch and is in turn overridden by switch S1.

Fig. 4
Wells Device
A.C. Switching

In summary, the Wells device exhibits three modes of operation: (1) off—locked out (switches S1XA and S1XB open); (2) rentable—key position 2 or 3 and S1 not actuated (switches S1XA and S1XB closed and switch S1 open); and (3) rented—key position 2 or 3 and S1 actuated (switches S1XA and S1XB closed and switch S1 closed). Normal operation of the Wells device can be achieved *only* by depressing S1 *while* the power is switched on (key switch position 2 or 3). The invention claimed in the Sonnenberg patent, on the other hand, also exhibits three modes of operation: (1) "off"—rentable (override switch not actuated); (2) "on"—rented (override switch actuated); and (3) "on"— key operation (key switch turned on and override switch not actuated).

On the basis of our examination of the record we infer that the district court necessarily found the following relative to the Wells device: (1) switches S1B, S1C, and S1D are disabled; (2) the key switch controls only switches S1XA and S1XB—the master on-off switch; and (3) the receiver can be actuated only by depressing S1

while the key switch is in either position 2 or 3 (so that switches S1XA and S1XB are closed).

*Literal Infringement.*

These implied findings lead inexorably to the district court's express finding that the Wells device lacks the claimed limitation of overriding a locked key switch. Further, these findings indicate that the Wells device does not exhibit the claimed "on" key switch position.

Both the "on" and "off" positions recited in claim 1 correspond to the "on" positions [positions 2 and 3] of the key switch in the Wells device. The Wells device cannot be operated normally through the key switch alone, as is required by claim 1. Rather, switch S1 must be depressed in conjunction with power being supplied to the receiver through the key switch. Hence, on the basis of the record before us, we conclude that the district court's finding, that Wells does not literally infringe the claims of the Sonnenberg patent, is not clearly erroneous.

*Doctrine of Equivalents.*

While the district court purported to apply the standard articulated in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*,[21] it entered no findings on the issue of equivalence: whether the Wells device performs substantially the same function as the claimed invention in substantially the same way to obtain substantially the same result.[22] Yet, the court clearly implied that Wells does not infringe the Sonnenberg patent under the doctrine of equivalents and entered judgment to that effect.

We infer that the district court necessarily found that the Wells device, lacking the claimed function of overriding a locked key switch, does not function in substantially the same way as the claimed invention.

**21.** *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607–09, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1950).

**22.** *Id.* at 608, 70 S.Ct. at 856; *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929).

That inference is supported by the record. Accordingly, we conclude that the district court's finding, that the Wells device does not infringe the Sonnenberg patent under the doctrine of equivalents, is not clearly erroneous.

Hence, we affirm in part the judgment of the district court insofar as it relates to the finding that the Wells device does not infringe the claims of the Sonnenberg patent, either literally or under the doctrine of equivalents.

### Attorney Fees

The trial judge found that this is not an exceptional case and denied Wells' request for attorney fees. In order to prevail on its cross-appeal, Wells must establish that the trial judge abused his discretion in this regard and not merely, as Wells' attorneys contend, that the trial judge committed clear error. Wells has not demonstrated the requisite abuse of discretion, although it attempts to do so by demonstrating alleged fraudulent conduct by ACS before the Patent and Trademark Office. Fraud has not been shown. Nor have other facts been established that would demonstrate that the trial judge abused his discretion in finding that this case is not exceptional. Thus, we affirm the district court's denial of Wells' motion for attorney fees.

### Conclusion

In summary, we hold that the district court committed both clear errors of fact and errors of law with respect to its resolution of the validity issue. The district court's conclusion that the Sonnenberg patent is invalid under section 103 is incorrect as a matter of law. We conclude that the trial court's finding, that Wells does not infringe the claims of the Sonnenberg patent, either literally or under the doctrine of equivalents, is not clearly erroneous. Additionally, we hold that the trial judge did not abuse his discretion in denying Wells' motion for attorney fees.

AFFIRMED IN PART AND REVERSED IN PART.