976 F.2d 747
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CON-VEY/KEYSTONE, INC., Plaintiff-Appellant,
v.
AM INDUSTRIES, INC.; Alan T. Johnson; Hydraulic Service &
Supply, Inc. and Mary Johnson, Defendants/Cross-Appellants.
 Nos. 92-1102, 92-1134.
 United States Court of Appeals, Federal Circuit.
 Aug. 13, 1992.
Suggestion for Rehearing In Banc Declined Sept. 25, 1992.
 
 Before MICHEL and LOURIE, Circuit Judges, and RESTANI, Judge.*
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 This case is an appeal and cross-appeal from a judgment entered November 8, 1991, in the United States District Court for the District of Oregon, Civil No. 88-1253-FR. Con-Vey/Keystone, Inc. (Con-Vey) filed suit against AM Industries, Inc. (AMI) claiming infringement of claims 9 and 10 of Con-Vey's U.S. Patent 4,640,655. AMI counterclaimed for a declaration of invalidity and non-infringement. The district court held that Con-Vey's patent was not infringed and was not invalid. We affirm.
 
 OPINION
 
 2
 The invention described and claimed in the '655 patent is a continuous breakdown hoist used to unload stacked tiers of lumber onto a conveyor belt for further processing. This hoist is more efficient than a standard breakdown hoist because the latter cannot feed lumber continuously, thereby experiencing a delay of twenty-five to forty seconds between the discharge of the final portion of a first load of lumber and the discharge of the first portion of the next load. The claimed invention eliminates this delay by having forks hold the load in place while movement of a skid continues to discharge the final portion of the first load. During this continuous discharge, the second load of lumber is so positioned that it can be immediately discharged after the first load.
 
 
 3
 Independent Claim 9 and dependent Claim 10 are the only claims in dispute. The relevant portion of Claim 9 is its last clause, which reads "means for moving the skid means and fork means relative to one another to move the tiers of a load supported by the fork means successively over the load-supporting elements, whereby the topmost tiers [slide] successively off the load and onto the skid elements."
 
 
 4
 The district court found that the specification and claims of the '655 patent describe tier-discharging means with skids that move relative to the accumulator forks and the frame of the machine. It further concluded that the claims describe accumulator forks that only move in and out of the load path rather than up and down along the load path. The court finally concluded that AMI's hoist lacked movable skid means and therefore did not infringe. Convey appeals this decision.
 
 
 5
 The parties dispute the scope of the phrase "moving the skid means and fork means relative to one another." Con-Vey argues that AMI infringes its claims because this phrase covers a hoist having a tier-discharge means that discharges tiers of lumber either by moving the skid means toward the fork means or by moving the fork means up toward the skid means. Con-Vey also argues that the district court improperly compared AMI's hoist to the preferred embodiments rather than to the claims of Con-Vey's patent and ignored the ordinary meaning of the word "relative."
 
 
 6
 Claim interpretation is a question of law which we review de nove. Specialty Composites v. Cabot Corp., 845 F.2d 981, 986, 6 USPQ2d 1601, 1604 (Fed.Cir.1988). To determine the meaning of the claims, we review claim language, the specification, and any relevant prosecution history. ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1988).
 
 
 7
 Claim 9 recites a means for moving skid and fork means relative to one another in such a way as to move tiers of the load over the load-supporting elements. It specifies a fork means as "means mounted on the frame for movement into and out of the load path." Upon review of the figures of the '655 patent, as well as the description, it is apparent that fork movement into and out of the load path does not cause the tiers of the load to move up and over the load supporting elements. The relative movement between the skid and fork means required by the claims must be produced by movement of the skid means along the load path while the fork means remains stationary. Therefore, we conclude that the district court was correct when it found that the proper interpretation of the claims is that the skid means must be movable along the load path to effect discharge.
 
 
 8
 Con-Vey also argues that the district court erred by considering only the preferred embodiments when determining the meaning of the claim language "moving the skid means and fork means relative to one another." Courts should not ignore any meaningful disclosure in a patent specification and focus only on preferred embodiments. However, when the preferred embodiments constitute the best indication of the meaning of claim language, which is not contradicted elsewhere in the specification, it is not error to use them in interpreting the claims. Thus, upon review of the record, we conclude that the district court did not err when it reviewed the patent specification, referred to both embodiments of the invention, and concluded that it is the tier-discharging means or skid means that moves along the path relative to the main frame to discharge the lumber.
 
 
 9
 Con-Vey also challenges the trial court's conclusion of noninfringement. Literal infringement, infringement under the doctrine of equivalents, and determination whether an accused device is an equivalent under 35 U.S.C. § 112, p 6, are questions of fact which we review under the clearly erroneous standard. Durango Assocs., Inc. v. Reflange, Inc., 843 F.2d 1349, 1357, 6 USPQ2d 1290, 1295 (Fed.Cir.1988); see SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985);
 
 
 10
 For literal infringement to exist, every element of a means-plus-function claim or its substantial equivalent must be found in an accused device. Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739-40 (Fed.Cir.1987), cert. denied, 485 U.S. 961 (1988). The district court found that the AMI hoist does not have a moving skid means or the claimed "means for moving the skid means." Nor does it have any such means, according to § 112, p 6, equivalent in structure to that disclosed in the specification.
 
 
 11
 Con-Vey argues that under § 112, p 6, it is entitled by virtue of its means claim to a broader scope of protection than merely the disclosed embodiments. However, in determining the scope of equivalents to be given a means-plus-function claim, this court stated in Pennwalt Corp.:
 
 
 12
 Thus, it was not legal error (as Pennwalt asserts) for the district court to have made a comparison between Durand-Wayland's structure and the structure disclosed in the specification for performing a particular function. The statute means exactly what it says: To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for that structure.
 
 
 13
 Pennwalt Corp., 833 F.2d at 934, 4 USPQ2d at 1739 (citations omitted). The trial court had basis to find that the AMI hoist's tier-discharging means was not equivalent to the movable skid means disclosed in the specification. The court properly concluded that the accused device lacked a means equivalent in structure to that disclosed in the patent.
 
 
 14
 Con-Vey alleges that the district court erred by failing to find infringement under the doctrine of equivalents. The district court found that there was no infringement under the doctrine of equivalents because the ways in which the accused device and that encompassed by the patent claims discharge lumber are different. The court found that the accused device continuously discharges lumber without a skid means, and that it uses a movable fork means. The invention of the claims continuously discharges lumber using a movable skid and a stationary fork means. Thus, we agree that the accused and claimed devices do not operate in an equivalent way and therefore that the district court did not clearly err in holding that there was no infringement under the doctrine of equivalents.
 
 
 15
 On cross-appeal, AMI argues that claims 9 and 10 of Con-Vey's patent would have been obvious in light of the prior art. A question of obviousness is one of law, but it is based on factual inquiries. See Graham v. John Deere Co., 383 U.S. 1, 17, 148 USPQ 459, 467 (1966). These underlying factual determinations are reviewed under the clearly erroneous standard. Burlington Indus., Inc. v. Quigg, 822 F.2d 1581, 1584, 3 USPQ2d 1436, 1439 (Fed.Cir.1987).
 
 
 16
 AMI argues that the district court erred in finding that the Halahan patent, U.S. Patent 2,690,377, was more relevant to the obviousness of Claim 9 than the Rocklin continuous panel feeders sold by Con-Vey. The district court found that the Rocklin continuous panel feeder has accumulator forks that accept a diminished stack of panels from a lift bed; the forks are then indexed upward so that the discharge of panels can continue as the lift bed drops to receive the second load. In the Halahan patent, the stack of material is held stationary by the accumulator forks and the forks are not indexed upward at any time. Instead, the raking mechanism moves downwardly along the load path toward the supporting forks to discharge the load of lumber.
 
 
 17
 Both embodiments of the invention in Con-Vey's patent have accumulator forks that remain stationary to support the load and are not indexed upward. For this reason, the district court found that the Halahan patent was more relevant to the patentability of claims 9 and 10 than the Rocklin continuous panel feeder. We conclude that this decision was not clearly erroneous.
 
 
 18
 Obviousness cannot be established by combining the teachings of prior art references, absent some teaching, suggestion, or incentive supporting the combination. ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984). The district court found that there was no suggestion to combine either the Halahan patent or the Rocklin continuous panel feeders with prior art breakdown hoists or that a prior art raking mechanism could be interchanged for a moving skid means to effect discharge by gravity only and without movement of the accumulator forks. We find no error in this conclusion. Therefore, the court did not err in concluding that claims 9 and 10 of Con-Vey's patent are not invalid for obviousness.
 
 
 19
 The district court also held that AMI did not establish that Con-Vey intended to deceive the patent examiner by not disclosing the Rocklin feeders or by naming Jacobsen as the sole inventor. AMI continues to argue that Con-Vey engaged in inequitable conduct during the prosecution of its patent application and that this renders the patent unenforceable.
 
 
 20
 A holding of inequitable conduct is within the discretion of the trial court and is reviewed by this court under an abuse of discretion standard. "To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court." Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (citations omitted).
 
 
 21
 AMI has failed to demonstrate that the district court clearly erred in finding that AMI did not establish that Con-Vey had the required intent to deceive. In fact, AMI failed to produce any evidence that Con-Vey intended to deceive the patent examiner. Even when questioned at oral argument, AMI's counsel did not provide any evidence of intent except to argue that a high enough degree of materiality necessarily implied an intent to deceive. That argument is unsound. It is fundamental that to establish inequitable conduct, an intent to deceive is required. RCA Corp. v. Data General Corp., 887 F.2d 1056, 1065, 12 USPQ2d 1449, 1456-57 (Fed.Cir.1989). Moreover, there was no evidence that the failure to name David Morton as an inventor was based on fraudulent intent.
 
 
 22
 We have considered the other arguments made by Con-Vey and AMI and find them to be without merit.
 
 COSTS
 
 23
 No costs.
 
 
 
 *
 Judge Jane A. Restani of the United States Court of International Trade, sitting by designation