31 F.3d 1177
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re John B. JOHENNING.
 No. 93-1217.
 United States Court of Appeals, Federal Circuit.
 July 15, 1994.
 
 Before PLAGER and LOURIE, Circuit Judges, and RONEY*, Senior Circuit Judge.
 PLAGER, Circuit Judge.
 
 
 1
 John B. Johenning (Johenning) appeals the decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (Board) dated March 31, 1991 rejecting claims 9-11 of U.S. Patent Application Serial No. 07/470,163 for obviousness under 35 U.S.C. Sec. 103 (1988). We affirm-in-part and reverse-in-part.
 
 BACKGROUND
 
 2
 S.N. 07/470,163 is directed to a method of forming a cornerpiece of a waterbed mattress through injection molding. It was filed on January 25, 1990, with Johenning as the sole named inventor. The claims of that application that are at issue in this appeal are claims 9-11, which read:
 
 
 3
 9. In a method of making a corner in a waterbed mattress having walls of thin material, the steps of: forming by injection molding a cornerpiece which is substantially thicker and tougher than the film material, and sealing the cornerpiece to the film material at a corner of the mattress.
 
 
 4
 10. The method of Claim 9 wherein the injection molding step includes the forming of cleats which project from a surface of the cornerpiece and are an integral part of the cornerpiece.
 
 
 5
 11. The method of Claim 9 wherein the cornerpiece is formed with a three dimensional contour in the injection molding step.
 
 
 6
 On January 16, 1991, the examiner issued an office action finally rejecting these claims under 35 U.S.C. Sec. 103 as obvious over Miller, U.S. Patent No. 4,251,308, in view of Saputo, U.S. Patent No. 4,734,946. According to the examiner, it would have been obvious to form the plastic waterbed mattress cornerpiece disclosed in Miller through injection molding as taught in Saputo[1] and thus achieve the claimed method.
 
 
 7
 Johenning then appealed to the Board. On March 31, 1991, the Board, in the decision that gave rise to this appeal, reversed the examiner's rejection. According to the Board, the Miller and Saputo references "while combinable, would not have been suggestive of the now claimed method. From our perspective, the suggestion that would have been derived from one versed in the art from the Miller and Saputo patents, collectively considered, would have been to support the watermattress of Miller on the foundation taught by Saputo." Pursuant to 37 C.F.R. Sec. 1.196(b) (1992), however, the Board introduced a new ground of rejection. According to the Board, it would have been obvious to one of ordinary skill in the art to form the known plastic laminate cornerpiece disclosed in appellant's specification[2] through injection molding as taught in Saputo because of the "self-evident benefit of injection molding, i.e. the ability to fabricate a simpler, one piece cornerpiece, as opposed to the known more complex two-piece laminate." Thus, the Board rejected claim 9.
 
 
 8
 As to claim 10, the Board determined that the cleats recited in that claim would have been obvious in view of the raised lettering formed in the known plastic laminate cornerpiece referred to in appellant's specification. As to claim 11, the Board determined that the three-dimensional contouring recited by that claim would have been obvious in view of the contoured edge of the known waterbed mattress disclosed in appellant's specification[3] as well as the contoured shape of the frame cornerpiece disclosed in Saputo (see corner connectors 21-24). Thus, it rejected these claims as well.
 
 
 9
 The Board's decision became final on October 20, 1992, when Johenning's request for reconsideration was denied. This appeal followed.
 
 DISCUSSION
 I.
 
 10
 We review the Board's ultimate conclusion of obviousness anew, and without deference to the Board's judgment. See In re Woodruff, 919 F.2d 1575, 1577, 16 USPQ2d 1934, 1935 (Fed.Cir.1990). The factual findings underlying that conclusion, such as the teachings of the art, are reviewed under the clearly erroneous standard. See Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1379-80, 231 USPQ 81, 90 (Fed.Cir.1986), cert. denied, 480 U.S. 947 (1987).
 
 
 11
 Johenning's first point is that Saputo is non-analogous art, and thus the Board erred in its reliance on that reference to support its rejection. According to Johenning, that reference covers a waterbed frame, a rigid structure, whereas appellant's specification concerns a waterbed mattress, a flexible structure. Thus, the two are non-analogous.
 
 
 12
 We disagree. The Board, through its reliance on Saputo to reject the claims, impliedly found that reference to be analogous. We must uphold this finding unless it is shown to be clearly erroneous. See In re Clay, 966 F.2d 656, 658, 23 USPQ2d 1058, 1060 (Fed.Cir.1992). As noted, Johenning focuses on the different characteristics of a waterbed mattress and a waterbed frame. In Clay, we recognized that one of the criteria for determining whether a reference is analogous art is whether it is from the same field of endeavor, regardless of the problem addressed. Id. at 658-59, 23 USPQ2d at 1060. The Saputo reference meets this criterion. Both it and appellant's specification are directed to critical components of a waterbed per se. Thus, both are encompassed within the field of waterbed manufacture. The Board did not err.
 
 II.
 
 13
 Johenning's next point is that, even if Saputo is considered to be analogous art, there is no suggestion or motivation in the art to combine that reference with the teachings referred to in appellant's specification to achieve the claimed method.
 
 
 14
 The law is well settled that "[o]bviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination." ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984). However, the "suggestion to modify the art to produce the claimed invention need not be expressly stated in one or all of the references used to show obviousness." Cable Elec. Prods., Inc. v. Genmark, Inc., 770 F.2d 1015, 1025, 226 USPQ 881, 886 (Fed.Cir.1985). See also In re Nilssen, 851 F.2d 1401, 1403, 7 USPQ2d 1500, 1502 (Fed.Cir.1988). "Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art." Cable Elec., 770 F.2d at 1025, 226 USPQ at 886-87 ( quoting In re Keller, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981)).
 
 
 15
 Since Johenning argued the merits of claims 9-11 separately before the Board, and does so on appeal to this court as well, we must review this issue with respect to each of the claims.
 
 
 16
 As to claim 9, the Board specifically found that the motivation to form the plastic laminate cornerpiece of appellant's specification through injection molding was the "self-evident benefit" of avoiding the difficulties of fabricating the part through lamination. On appeal, Johenning argues that this finding is clearly erroneous because Saputo teaches the use of other techniques for fabricating parts besides injection molding, and does not identify injection molding as being critical in any way.
 
 
 17
 However, as noted, the relevant inquiry is the collective teachings of the prior art. According to appellant's specification, the known laminate cornerpieces were constructed of multiple layers of vinyl. Thus, the process of manufacturing such a cornerpiece necessarily must have involved multiple material handling steps, i.e., one for each layer in the laminate. Miller establishes that a common objective in the waterbed art was "to provide a mattress which can be mass produced with a minimum of material handling ... steps."[4] Thus, one of ordinary skill in the art would have been motivated to seek an alternative to lamination.
 
 
 18
 Since Saputo, we have concluded, is analogous art, one skilled in the art would have been aware of the various fabrication techniques disclosed in that reference. Of all these techniques, only injection molding appears to be well-suited for mass production and capable of avoiding the multiple material handling steps associated with lamination. Thus, that technique would have naturally suggested itself to one of ordinary skill in the art. Accordingly, the Board did not err as to claim 9.
 
 
 19
 As to claim 10, the Board concluded that the cleats recited in claim 10 would have been obvious from the raised lettering formed in the known laminate cornerpiece disclosed in appellant's specification. That lettering is described as being "relatively flat" and "primarily decorative." The cleats recited in the claim, however, are disclosed as projecting above the exterior surface of the cornerpiece sufficiently to provide "protection against punctures," "resistance to abrasion," and "engage[ment of] the bedsheets" in order to "retain [them] in place on the mattress." There is no indication that the raised lettering in the known laminate cornerpiece projected sufficiently above the exterior surface of the cornerpiece to perform any of these functions. Thus, it would not have suggested the cleats recited by the claim.
 
 
 20
 Finally, as to claim 11, the basis for the Board's rejection was its finding that the formation of a cornerpiece with a three-dimensional contour (presumably in the shape of a rounded mattress corner) would have been obvious from the contoured shape of the known waterbed mattress as disclosed in appellant's specification, as well as the contoured shape of the frame cornerpiece disclosed in Saputo. Johenning has shown no error in this conclusion.
 
 CONCLUSION
 
 21
 For all the foregoing reasons, the decision of the Board is affirmed as to claims 9 and 11, and reversed as to claim 10.
 
 COSTS
 
 22
 Each party to bear its own costs.
 
 
 
 *
 Honorable Paul H. Roney, Senior Circuit Judge, Eleventh Circuit, sitting by designation
 
 
 [1]
 Saputo is directed to a frame for a waterbed mattress as opposed to the mattress itself. That frame consists of an assembly of interlocking pieces which may be formed through injection molding amongst other techniques. As that reference states:
 The various supports and platform 12 may be comprised of injection molded or other manufacturing process materials, such as plastic, or may be of wood, wood substitutes, metal, etc. However, plastic is preferred for its lightweight features. (Col. 3, 11. 55-59)
 
 
 [2]
 As that document states:
 Heretofore, there have been some efforts to provide waterbed mattresses with corners which will resist puncturing. In one such approach, layers of vinyl film are laminated together to form a cornerpiece, and the laminated structure is attached to the walls of the mattress by heat sealing. Raised lettering and a peripheral bead are formed in the cornerpiece by recesses in the sealing die.
 
 
 [3]
 As that document states:
 Other waterbed mattresses have been made with contoured or fitted corners. In these mattresses, the enclosure is typically formed with a corner structure having a height corresponding to the depth of the mattress so that the mattress will have substantially square corners when it is filled with water.
 
 
 [4]
 Col. 1, 11. 56-59