**WHITTAKER CORPORATION, BY ITS TECHNIBILT DIVISION,**
Plaintiff–Appellee,

v.

**UNR INDUSTRIES, INC.,**
Defendant–Appellant.

No. 89–1420.

United States Court of Appeals, Federal Circuit.

Aug. 14, 1990.

---

Alex Chartove, Spensley Horn Jubas & Lubitz, of Washington, D.C., argued for plaintiff-appellee. W. Thad Adams, III, Spensley Horn Jubas & Lubitz, of Washington, D.C., of counsel.

John P. Milnamow, Dressler, Goldsmith, Shore, Suther & Milnamow, Ltd., of Chicago, Ill., argued for defendant-appellant. With him on the brief was Karl R. Fink. Also on the brief were James W. Clement, Clement & Ryan, of Chicago, Ill., and Floyd A. Gibson and Blas P. Arroyo, Bell, Seltzer, Park & Gibson, of Charlotte, N.C.

Before FRIEDMAN, Senior Circuit Judge,* ARCHER and MAYER, Circuit Judges.

ARCHER, Circuit Judge.

UNR Industries, Inc. (UNR) appeals from the summary judgment granted by the United States District Court for the Western District of North Carolina, No. C–C–88–0110–M (Mar. 22, 1989), holding United States Patent No. Re. 32,453 (the '453 patent) "invalid ... under the 'Recapture Rule'" (*citing Ball Corp. v. United States*, 729 F.2d 1429, 221 USPQ 289 (Fed.Cir.1984)). We reverse and remand.

I

The '453 patent is a reissue of United States Patent No. 4,423,882 (the '882 patent). The patented invention is directed to a "Shopping Cart With Baby Seat."

In its reissue application, which was filed less than two years following the issuance of the '882 patent, UNR sought to broaden the scope of the '882 claims by removing one of the limitations that had been added during prosecution of the '882 patent. *See* 35 U.S.C. § 251 (1988).[1] Neither the grounds for reissue ("through error without any deceptive intention") nor the broadened scope of the claims of the reissued patent are challenged by Whittaker in this appeal.

Rather, the only question before us is whether the district court's determination on summary judgment that "the claims of the '453 reissue patent do not differ materially from the claims that were surrendered to obtain the allowance of the original ['882] patent" reflects a correct construction of the claims. In reaching this conclu-

---

* Judge Friedman took senior status on November 1, 1989.

1. Section 251 provides in pertinent part:
   § 251. Reissue of defective patents
   Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, ... by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent....

   ....

   No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

sion, the district court held that another limitation, added during prosecution of the '882 patent and retained in the same form in independent claims 1 and 22 of the reissued '453 patent,[2] did not change the "scope of the patent claims" of the application for the '882 patent.

More specifically, claim 1[3] of the '453 patent reads in pertinent part as follows:[4]

A shopping cart which comprises: ... a baby seat [a] *compartment* secured to the rear portion of said elevated frame, said baby seat including a bottom wall, two opposed side walls, a front wall having an upright, closed position and an open position, the width of said baby seat front wall being less than the width of said lading-carrying basket, said front wall being hinged at its bottom edge portion to permit it to be swung down from its closed position in the forward direction, when desired, to rest on the bottom wall of said lading-carrying basket, [c] *said hinge for said baby seat front wall being located at a level at least as high as the bottom wall of said lading-carrying basket* and a rear wall defining two openings to receive the legs of a baby seated in said baby seat....

Claim 1 of the original application that matured into the '882 patent read the same as the above-quoted claim 1 of the '453 patent with the exception of the underlined words. This original claim 1 (the surrendered or cancelled claim) was cancelled during the prosecution of the '882 patent.

The parties agree that amendment [a] makes no change in the scope of the claims but disagree as to the effect of amendment [c]. Whittaker contends that the latter change "merely makes explicit ... that which [was] already an implicit or inherent requirement of the cancelled original claims." On the contrary, UNR says that the language of the cancelled original claims was "broad enough to cover *any* hinge construction which is located at the bottom edge portion of the baby seat front wall, whether or not the hinge extends below, above, or is located at the same level as the bottom wall of the basket" and that the claims of the '453 patent are, therefore, narrower.

The district court interpreted the disputed claim language, including the third alteration (*i.e.*, amendment [c]), as follows:

It is the opinion of the court that in order for the front wall of the baby seat compartment to be "hinged at its bottom edge," the hinge point must be *at* the bottom edge portion of the front wall; that is, the point around which the hinge rotates must be *"at"* the bottom edge portion of the front wall rather than several inches *below* the bottom edge.

This being the case, the third alteration of the original claims specifying the location of the hinge does not effect an actual limitation of the scope of the patent claims. The court cannot envision, nor could the parties propose, a construction of the baby seat compartment that would have been *within* the scope of the original claims and *beyond* the scope of the claims of the reissue patent. Therefore, the third alteration of the original claims is not material, and the claims of the '453 reissue patent do not differ materially from the claims that were surrendered to obtain the allowance of the original patent.

(Emphasis in original.)

## II

■ Claim interpretation is a question of law freely reviewable by this court. *See, e.g., Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 986, 6 USPQ2d 1601, 1604 (Fed.Cir.1988); *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 866, 228 USPQ 90, 93 (Fed.Cir.1985). Proper interpretation of claims requires consideration of the specification, the prosecution history, the other claims and expert testimony where appropriate. *See, e.g., Loctite*, 781 F.2d at

2. The remaining claims in the '453 patent depend from claim 1.

3. Virtually identical language and identical amendments are present in claim 22.

4. The underlined words, identified as amendments [a] and [c], were added during the prosecution of the '882 patent and were retained in the same form in the '453 patent.

867, 228 USPQ at 93. Moreover, claims are generally construed so as to sustain their validity, if possible. *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577, 221 USPQ 929, 932 (Fed.Cir.1984).

The district court erred in holding that the cancelled original claims of the application that resulted in the '882 patent were not narrowed by amendment [c] but instead were unchanged in scope. The court arrived at its claim interpretation primarily by construing the word "at" in the phrase "hinged at its bottom edge portion" as requiring that the point about which the hinge rotates be located in a specific position. The court said that the hinge point must be " 'at' the bottom edge portion of the front wall rather than several inches below the *bottom* edge." (Emphasis in original.) The district court's opinion, however, does not consider or analyze any of the underlying interpretative sources which this court has deemed necessary for proper claim construction. *See Loctite*, 781 F.2d at 867, 228 USPQ at 93. In fact, after the specification, the prosecution history, the other claims and the affidavit of the inventor, Dr. Stover, are brought to bear on the language of the cancelled original claims as well as on the reissue claims, it becomes clear that amendment [c] resulted in narrower claims than those propounded in the original '882 patent application.

In the '882 patent specification, the description of the preferred embodiment of the invention refers to a specific type of hinge called a lost motion hinge, and the drawings illustrate the lost motion hinge as part of the preferred embodiment. The specification cautions, however, that "[t]he above description has been given for ease of understanding only" and that "[n]o unnecessary limitations should be understood therefrom, as modifications will be obvious to those skilled in the art."

By interpreting the words "hinged at its bottom edge portion" in the claim as requiring that the hinge point be in a precise location in relation to the front wall of the baby seat, the district court appears to have given undue importance to the type of hinge and the exact hinge point shown in the specification's drawings. The illustrated type of hinge shows the pintle on which the hinge rotates as an extension of the bottom edge of the front wall of the baby seat and the court appears to have imposed this structure as an additional limitation on cancelled original claim 1. However, the prosecution history and the other claims clearly demonstrate that claim 1 of the '882 patent was intended to be a broad claim that would cover more than the preferred embodiment described in the specification and depicted in the drawings.

In the prosecution of the '882 patent, UNR also stated that "[t]he invention is defined most broadly in claim 1." Further, in referring to the narrower, dependent claims of the '882 patent application, which specifically claimed the lost motion hinge as the preferred embodiment, UNR noted that they included important features "of a preferred form of the shopping cart of this invention." For example, original claims 3 and 7, in addition to calling for a lost motion hinge, required that such a hinge have a "hinge pintle at each end of the bottom edge portion of said front wall." Thus, these dependent claims in the application for the '882 patent described the hinge point as being in the same location as shown in the drawings, which is the same place the court determined the hinge point must be under the broader language of claim 1. However, it is inconsistent with the principle of claim differentiation that cancelled original claim 1, an independent claim, should be given the same meaning as dependent original claims 3 and 7. The language of original claims 3 and 7 regarding the location of the pintle, which is the axis about which the hinge rotates, clearly suggests that broader claim 1 would permit the hinge point, or axis, to be placed in a position that is not exactly aligned with the "bottom edge portion of the front wall." *See DMI, Inc. v. Deere & Co.*, 755 F.2d 1570, 1574, 225 USPQ 236, 239 (Fed.Cir. 1985).

The district court said that it could not envision, nor could the parties propose, "a construction *within* the scope of the original claims and *beyond* the scope of the

claims of the reissue patent." (Emphasis in original.) However, such a determination runs counter to the affidavit of the inventor, Dr. Stover, which was submitted by UNR in opposition to the motion for summary judgment. Dr. Stover described several well-known types of offset hinges, which he noted are commonly referred to as hinged "at the rear edge portion" or "at the inside edge portion" of the articles to which they are attached (*e.g.*, a toilet seat or a gate), even though their hinge points are somewhat distanced from the parts being hinged. The district court apparently did not give weight to this affidavit. On summary judgment, however, facts are to be viewed most favorably for the non-moving party and inferences drawn in its favor. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed. Cir.1985). UNR contended on the basis of this affidavit that hinges of the type described in the affidavit, if used as part of the baby seat described in the invention, would not require that the hinge point be located level with the bottom edge portion of the baby seat front wall.

Finally, the court below did not explain how amendment [c], which locates the hinge in relation to a different part of the structure of the claimed invention, related to the original hinge limitation. The cancelled original claims required that the front wall of the baby seat be hinged at *its* (*i.e.*, the baby seat's) bottom edge, but amendment [c] requires, in addition, that the hinge for the front wall also be positioned at least as high as the *bottom wall of the lading-carrying basket*. The amended claims make clear that no part of the hinge structure can protrude below the bottom of the basket, a restriction that did not exist in the unamended claims. Thus, if an offset hinge, of the type referred to in Dr. Stover's affidavit were used for the baby seat, it would not be covered by the amended claims if any part of the hinge extended beyond or below the hinged pieces, whereas it would have been covered before the amendment. We conclude that the added limitation on the location of the hinge in relation to the bottom wall of the basket is not of the same scope as the hinge limitation that is directed to the bottom of the front wall of the baby seat.

Since we hold that the claims of the reissue patent are narrower in scope than the cancelled original claims of the application that resulted in the '882 patent, the '453 patent cannot be held invalid under the recapture rule as described in *Ball Corp. v. United States*, 729 F.2d 1429, 1436, 221 USPQ 289, 295 (Fed.Cir.1984) ("the patentee is free to acquire, through reissue, claims that are *narrower* in scope than the canceled claims." (emphasis in original)).

We reverse the grant of summary judgment and remand for further proceedings.

### COSTS

Costs to appellant.

**REVERSED AND REMANDED.**