WATERLOO FURNITURE COMPONENTS, LTD., Plaintiff,

v.

HAWORTH, INC., Defendant.

No. 91 C 3433.

United States District Court, N.D. Illinois, E.D.

June 18, 1992.

Jon O. Nelson, James Carl Gumina, Allegretti & Witcoff, Ltd., Chicago, Ill., for plaintiff.

William K. West, Jr., Nancy J. Linck, Mark G. Paulson, Cushman, Darby & Cushman, Washington, D.C., Timothy J. Vezeau, Edward M. O'Toole, Douglas H. Siegel, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., Dale H. Thiel, Flynn, Thiel, Boutell & Tanis, P.C., Kalamazoo, Mich., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Waterloo Furniture Components, Ltd. (Waterloo) filed this declaratory judgment action against defendant Haworth, Inc. (Haworth), owner of U.S. Patent No. 4,616,798 ('798 patent), asking this court to find that the '798 patent is invalid and unenforceable, and that Waterloo did not infringe the patent claims. In its answer, Haworth admitted charging Waterloo

with infringing the '798 claims and filed a counterclaim charging infringement.[1] Waterloo now moves for summary judgment, alleging that claims 22 and 31 through 38 of the '798 patent are invalid because they do not satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2.[2] Alternatively, plaintiff asks this court to find that the claims at issue are limited to the structures described in the '798 patent, or their equivalents. For the reasons stated, we deny plaintiff's motion.

## I. FACTS

The '798 patent claims an apparatus that can be used to support a device such as a computer keyboard. The claimed apparatus comprises a tray which is stored underneath the primary work surface, such as a desk. This tray can be pulled out and pivoted vertically to a desired working position. The tray also may be pivoted around a vertical axis, if desired by the user.

Claim 22 is representative of claims at issue in this case. The critical clauses in that claim are emphasized:

22. In combination, a primary work support defining thereon an enlarged upwardly facing primary work surface, the primary support having a front edge adjacent the primary work surface, an auxiliary shelflike support defining thereon an enlarged upwardly facing auxiliary work surface adapted for supporting a keyboard unit thereon, the auxiliary shelflike support having front and rear edges and spaced side edges so that the auxiliary support is of substantial sideward extent, and mounting means connecting said primary and auxiliary work supports together for movably supporting the auxiliary support relative to the primary support in the vicinity of the front edge of the primary support, the improvement wherein said mounting means comprises:

carriage means positioned under and movably mounted on the underside of said primary support for linear horizontal translation of said carriage means relative to said primary support along a direction which extends substantially perpendicularly with respect to the front edge of said primary support, said carriage means permits horizontal linear translation of said auxiliary support relative to said primary support between (1) an inner storage position wherein the auxiliary support is disposed substantially directly under said primary support, (2) an outer use position wherein said auxiliary support is positioned entirely forwardly of the primary support so that the rear edge of the auxiliary support is spaced forwardly a substantial distance from the front edge of the primary support, and (3) an intermediate use position wherein the auxiliary support is still positioned in its entirety forwardly of said primary support but is disposed with its rear edge horizontally closely adjacent the front edge of the primary support;

*first means positioned under said primary support and mounted on said carriage means;*

*second means mounted on said auxiliary support and positioned below the underside thereof;*

vertically swingable, elongated link means having the opposite ends thereof pivotally connected to said first and second means for permitting vertical displacement of the auxiliary support relative to the primary support while maintaining said auxil-

---

1. Curiously, in its Rule 12(n) statement Haworth does not dispute that it charged Waterloo with infringement "for purposes of this Motion." After having admitted in its answer charging Waterloo with infringement, and having filed the counterclaim for infringement in this action, we fail to understand how Haworth cannot unequivocally agree that this fact is not in dispute.

2. Paragraph 2 of 35 U.S.C. § 112 states:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

iary support oriented so that the upper surface thereof maintains its predetermined upwardly facing orientation relative to the primary support and is not changed due to the vertical swinging of the link means, said link means permitting said auxiliary support to be swingably vertically moved between a raised use position wherein the auxiliary support is approximately horizontally aligned with the primary support and a lowered storage position wherein the auxiliary support is vertically spaced downwardly a substantial distance below the primary support to permit the auxiliary support and a keyboard unit thereon to be positioned substantially entirely below the primary support, said link means also permitting the auxiliary support to be vertically moved into a partially lowered use position wherein the auxiliary support is vertically spaced downwardly only a small distance below said primary support such that the keyboard unit is approximately horizontally aligned with the front edge of said primary support but said auxiliary support is spaced upwardly from said lowered storage position;

said link means comprising a vertical parallelogram linkage including a pair of elongated and substantially parallel upper links disposed in adjacent but sidewardly spaced relationship, said pair of upper links having their rearward ends pivotally joined to said first means about a first substantially horizontal pivot axis and their outer ends pivotally joined to said second means about a second substantially horizontal pivot axis, the sideward spacing between said pair of upper links being a small fraction of the overall sideward extent of said auxiliary support, and an elongated lower link positioned sidewardly between said upper links and having its rearward end pivotally joined to said first means about a third substantially horizontal pivot

axis and its outer end pivotally joined to said second means about a fourth substantially horizontal pivot axis;

stop means coacting between said link means and said primary support and effective when the auxiliary support is in said partially lowered and raised use positions for preventing inward movement of the auxiliary support from said intermediate use position toward said inner storage position so as to prevent the keyboard unit from being struck by the primary support, said stop means including a stop which is fixedly positioned adjacent the underside of said primary support and is spaced rearwardly from the front edge thereof, said stop means being ineffective when the auxiliary support is in said lowered storage position for permitting the auxiliary support to be slidably displaced into said inner storage position; and

means for locking said link means at either of said end positions or at any intermediate position therebetween to prevent vertical swinging thereof, said locking means including a readily-accessible, manually-engageable locking member for controlling the locking and unlocking of said link means.

Waterloo contends that these clauses make the claims at issue indefinite because they recite a means without specifying a function, as required by 35 U.S.C. § 112, ¶ 6.

## II. STANDARDS OF DECISION

### A. *Burden of Proof*

■ The '798 patent is presumed valid and Waterloo has the burden of establishing facts by clear and convincing evidence that would support a conclusion of invalidity. *See Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 834, 20 U.S.P.Q.2d 1161, 1173 (Fed.Cir.1991); *Stoller v. Ford Motor Co.*, 784 F.Supp. 506, 509 (N.D.Ill.1992). This presumption of validi-

ty and the requirement to establish facts showing invalidity by clear and convincing evidence applies to challenges contending that the claims are indefinite. *See Ortho-kinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575, 1 U.S.P.Q.2d 1081, 1087–88 (Fed.Cir.1986); *Radio Steel & Mfg. Co. v. Mtd Products, Inc.*, 731 F.2d 840, 845, 221 U.S.P.Q. 657, 661 (Fed.Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984); *see also Ralston Purina Co. v. Far–Mar Co.*, 772 F.2d 1570, 1574, 227 U.S.P.Q. 177, 178 (Fed.Cir.1985) (standard applies to challenges under § 112),

### B. *Summary Judgment*

■ Summary judgment is appropriate where "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571, 18 U.S.P.Q.2d 1001, 1005 (Fed.Cir.1991); *see Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). Waterloo bears the burden of showing the absence of a genuine issue of material fact, *see SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116, 227 U.S.P.Q. 577, 581 (Fed.Cir.1985) (*en banc*), and we must resolve any doubts as to the existence of material factual issues in favor of Haworth, the nonmoving party. Further, we must draw all reasonable inferences in favor of Haworth. *See Scripps*, 927 F.2d at 1571, 18 U.S.P.Q.2d at 1005; *Stoller*, 784 F.Supp. at 510. We also must consider the substantive evidentiary standard when deciding a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Ryko Mfg. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 716, 21 U.S.P.Q.2d 1053, 1055 (Fed.Cir.1991). As we stated above, Waterloo bears the burden of clearly and convincingly establishing facts supporting a conclusion that the claims are indefinite. Thus to prevail on

this motion Waterloo must show that a trier of fact would find that it had proved all facts necessary to show indefiniteness by clear and convincing evidence, with all inferences drawn in Haworth's favor.

### III. DISCUSSION

Waterloo contends that claims 22 and 31 through 38 are invalid due to indefiniteness. It argues that these claims recite a means without an accompanying function, and thus do not comply with 35 U.S.C. § 112, ¶ 6.[3] Waterloo contends that the absence of such a functional statement renders the claims indefinite as a matter of law.

### A. *Does the Term "Means" Always Require a Function?*

Citing *Ex parte Klumb*, 159 U.S.P.Q. 694 (Bd.Pat.App.1967), Waterloo contends that the use of the word "means," without an accompanying function, renders a claim indefinite. However, this issue was not definitively addressed by the Board in *Klumb*. The only issue decided in that case was that the terms "plate means" and "wing means" did not comply with the then 35 U.S.C. § 112, ¶ 3 (now 35 U.S.C. § 112, ¶ 6). The patent applicant had argued that the claims conformed to the statute, but the Board decided that "plate means" and "wing means" did not specify any function. Interestingly, the Board did not address the issue raised by the applicant of whether the terms "means" or "mechanism" were proper terms for a claim. *See Klumb*, 159 U.S.P.Q. at 695.

■ The real basis of Waterloo's argument appears to be that we must interpret any claim containing the term "means" as claiming an element in means-plus-function form, in accordance with 35 U.S.C. § 112, ¶ 6. The natural extension of this argument is that the word "means" can never have any interpretation other than calling for a means-plus-function element. The

---

**3.** Para. 6 of 35 U.S.C. § 112 states:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

problem with Waterloo's position is that it ignores the rule of law repeatedly stated by the Court of Appeals for the Federal Circuit that allows us to look beyond the claim language when interpreting claims. *See e.g., Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387, 21 U.S.P.Q.2d 1383, 1386 (Fed.Cir.1992). *United States v. Telectronics, Inc.,* 857 F.2d 778, 781, 8 U.S.P.Q.2d 1217, 1219 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989). We note that although there is little caselaw concerning the interpretation of the term "means" when not in "means-plus-function" form, this issue was faced by one court in this district. In *Sargent Indus., Inc. v. Sunstrand Corp.,* 189 U.S.P.Q. 225, 230 n. 5 (N.D.Ill.1975), the district court looked to the specification to construe an unidentified "means" term. Waterloo has introduced no evidence or caselaw that even suggests that *Sargent* was wrongly decided. Consequently, we hold that the use of the word "means" in a claim does not as a matter of law refer to an element expressed in means-plus-function form. Whether the bare use of the term "means" renders a claim indefinite depends on the interpretation of that claim.

▮ Haworth contends that a person of ordinary skill in the art would understand the claims at issue and thus those claims are not indefinite. Claims are indefinite where they do not reasonably appraise one of ordinary skill in the art of their scope. *Amgen, Inc. v. Chugai Pharmaceutical Co.,* 927 F.2d 1200, 18 U.S.P.Q.2d 1016, 1030 (Fed.Cir.). *cert. denied,* — U.S. —, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991); *Telectronics,* 857 F.2d at 786, 8 U.S.P.Q.2d at 1223. To support its position, Haworth introduces testimony of Harold R. Wilson, one of the inventors of the apparatus claimed in the '798 patent. Except for the '798 patent, Waterloo introduces no evidence of how a person of ordinary skill in the art would interpret claims 22 and 31 through 38. However, our task remains to interpret the claims at issue.

**4.** The critical time period for claim interpretation is the filing date of the claims or the date of their amendment, not the trial date. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d

### B. *Claim Interpretation*

▮ Claim interpretation is a question of law that may depend on the resolution of underlying factual issues. *See Telectronics,.* 857 F.2d at 781, 8 U.S.P.Q.2d at 1219. In interpreting claims, courts consider the language of the claims, the patent specification, the prosecution history, the prior art and expert testimony. *Whittaker Corp. v. UNR Indus., Inc.,* 911 F.2d 709, 711, 15 U.S.P.Q.2d 1742, 1744 (Fed.Cir. 1990); *SRI Int'l,* 775 F.2d at 1118, 227 U.S.P.Q. at 583. We give words in the claims their ordinary meaning to one of ordinary skill in the art, unless the patentee used those words differently, as evidenced by the sources listed above. *See Intellicall,* 952 F.2d at 1387, 21 U.S.P.Q.2d at 1386. However, the patentee's subjective intent that a term should be interpreted differently from its ordinary meaning cannot create a genuine issue of material fact precluding summary judgment. *Id.* at 1387, 21 U.S.P.Q.2d at 1386.

### 1. Do the Terms "First Means" or "Second Means" Refer to a Means–Plus–Function Element?

▮ We must first determine whether or not a person having ordinary skill in the art would have interpreted the elements "first means" and "second means" in the claims at issue as claiming means-plus-function elements.[4] We note that the patentee has flexibility in drafting claims and that there is no required language to express an element in means-plus-function format. However, looking at the language of the claims, the specification and the prosecution history, we find no evidence that a person having ordinary skill in the art would understand any of the claims in dispute, except the reference to "first means" in claim 33 and "second means" in claim 35, to include a means-plus-function element. Except for the portion of the claims discussed *supra,* the claim language

1540, 1556–57, 220 U.S.P.Q. 303, 315 (Fed.Cir. 1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

does not specify a function. Looking at the prosecution history, we find no evidence that would shed further light on the meaning of these terms.[5]

Perhaps the strongest evidence that a person of ordinary skill in the art would not interpret the terms "first means" and "second means" as functional elements, can be seen by looking at other claims. In claim 1, for example, the first means and second means are specified "for pivotal movement" (claim 1, col. 12, lines 23–29). Independent claims 9, 16 and 19 include similar functional statements. Additionally, two of the independent claims at issue, claims 33 and 35, recite functional statements for the first means and second means, as well.

In claim 33 the inventors specify "first means being mounted on said carriage means *for pivotal movement* relative thereto about substantially vertically hinge axis means for enabling the link means ..." (col. 22, lines 32–35 (emphasis added)). Similarly, in claim 35 the second means is identified "*for pivotal movement ... for permitting horizontal angular displacement ...*" (col. 23, lines 3–9 (emphasis added)). Contrasting the language in claims 1, 9, 16, 19, 33 and 35, with the language in the critical clauses, we cannot, in the absence of testimony from a person of ordinary skill in the art, read functional language into the terms "first means" and "second means."

Nor does Mr. Wilson's affidavit provide evidence that a person of ordinary skill in the art would interpret the terms "first means" and "second means" as functional elements. While Mr. Wilson testified that the function of the first means and the second means is to provide connecting pivot points for other elements (Wilson aff. ¶ 10, p. 11), the post-issue intent of an inventor cannot affect the court's interpretation of a claim. *See Intellicall*, 952 F.2d at 1387, 21 U.S.P.Q.2d at 1386. Neither can we reasonably interpret language in independent claims 22, 31, 33, 35 and 36, stating that the link means are pivotally connected to the first means and the second means (*see e.g.*, claim 22, col. 18, lines 43–49), as specifying a function for the first means and the second means. These clauses simply state the functional relationship between the various elements (link means, first means, second means). While stating relationships between elements in a claim may clarify what the inventor is claiming, inventors generally use such language when the elements are not in means-plus-function format. *See* 2 D.R. Cherry, D.G. Conlin, I. Kayton, R.L. Schwaab, *Patent Practice* 10–32 to –33 (4th ed. 1989).

In conclusion, we see no competent evidence that would indicate that a person of ordinary skill in the art would interpret the terms "first means" and "second means" in the critical clauses as means-plus-function elements. However, these may be sufficiently defined as structural elements.

2. Are the Terms "First Means" and "Second Means" Defined as Structural Elements Rather Than as "Means–Plus–Function" Elements in the Specification or Drawings?

■ Haworth contends that a person of ordinary skill in the art would recognize that the terms "first means" and "second means" refer to "bracket-like structures," which are identified in the drawings and specification as intermediate member 41 and other intermediate member 59, respectively. Waterloo, not disputing that the terms at issue *could* refer to these interme-

5. Claim 22 was submitted by amendment to the parent application (# 06/386,131) as claim 48. The inventors did not shed further light on the terms "first means" and "second means" in their remarks accompanying the amendment. The examiner allowed the future claim 22 without comment. The inventors subsequently abandoned the parent application and filed a continuation application (# 06/706,231). Claim 48 (patent claim 22) was amended prior to the prosecution of this application. The examiner rejected application claim 48 (claim 22) as obvious in light of certain references. She did not reject this claim for indefiniteness. The inventors again amended this claim and added independent claims 64 through 67 (claims 31, 33, 35 and 36). As before, they did not include any discussion of the elements "first means" and "second means" in their remarks accompanying these amendments. The examiner finally allowed these claims, again without making further comments.

diate members, maintains that the description and the drawings do not make the claim definite.

The specification describes a hinge connection between a portion of the link means and intermediate members 41 and 59 ('798 patent, col. 6, lines 7–15). Figure 2 shows intermediate member 41 below the primary support 13 and attached to the carriage 16. This matches the connections of the first means in the claims at issue. Similarly, Figure 2 shows the other intermediate member 59 attached below the auxiliary support, similar to the connection of the second means.[6] Thus, the specification and the drawings provide evidence from which a person of ordinary skill in the art *could* interpret the terms "first means" and "second means" to refer to the intermediate members. *See Sargent Indus.*, 189 U.S.P.Q. at 230 n. 5 ("no other mechanism is suggested by claims at issue, and since the specification and other claims specifically contemplate ball races, it is proper to construe the 'means' as referring to ball races").

Haworth also points out that Waterloo is assignee of U.S. Patent No. 5,037.054 ('054 patent), which describes the '798 patent as disclosing a mechanism comprising, among other elements, "first and second brackets" ('054 patent, col. 1, lines 10–15). This description of the prior art is additional evidence that others skilled in the art would understand that the first means and the second means refer to bracket-like structures. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547, 221 U.S.P.Q. 1, 7 (Fed.Cir.1984) (use of terms at issue in describing challenger's product).

While Haworth's evidence on claim interpretation is limited, it surely presents us with a genuine issue of material fact which we cannot resolve at summary judgment. As we stated in part II(B), *supra*, Waterloo bears the burden of showing that no such factual issue exists, but it has introduced no evidence as to how a person having ordinary skill in the art would interpret the critical terms. At trial, Waterloo will have an opportunity to convince a jury with expert testimony, but a decision on claim interpretation must wait for that day.

This leads us to the question of whether the claims are indefinite. So long as there remains a genuine issue of material fact concerning the interpretation of the claims, we cannot determine whether those claims are indefinite. Consequently, we deny Waterloo's motion that claim 22 and claims 31 through 38 are invalid due to indefiniteness.

**C.** *Limitations on Interpretation of Means–Plus–Function Elements*

In its motion, Waterloo asks that if this court finds claims 22 and 31 through 38 to be definite, that we declare that these claims are limited to means which perform the same function and are structurally equivalent to means disclosed in the '798 patent. Haworth argues that such an interpretation would impermissibly limit the claims to the best mode disclosure.

We need not decide this question for two reasons. First, we interpret the terms "first means" and "second means" in claims 22 and 31 through 38 as not claiming means-plus-function elements. Lacking a means-plus-function element, the critical clauses are not subject to the restriction of 35 U.S.C. § 112, ¶ 6, at least with reference to the first means and the second means. Second, all Waterloo really is asking is that we restate the law. At trial, Haworth will have the burden of proving infringement by a preponderance of evidence. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535, 19 U.S.P.Q.2d 1367, 1369 (Fed. Cir.1991). To prove literal infringement, Haworth must show that the structure of Waterloo's alleged infringing apparatus is the same or *structurally equivalent* to the means described in the '798 patent. *See id.* at 1536, 19 U.S.P.Q.2d at 1370.[7] At trial, we can consider the issue in the context of

6. The specification goes into great detail concerning each connection (*see* col. 5).

7. The elements in the accused device also must perform the same function as the claimed means. *See Intel Corp.*, 946 F.2d at 841, 20 U.S.P.Q.2d at 1178.

infringement rather than as an abstract proposition at this time.

## CONCLUSION

Waterloo has not established that there is no genuine issue of material fact concerning the interpretation by one of ordinary skill in the art, of the terms "first means" and "second means" in claims 22 and 31 through 38. Consequently, Waterloo is not entitled to summary judgment and we deny its motion.