**ETHICON ENDO-SURGERY, Plaintiff,**

**v.**

**RICHARD-ALLAN MEDICAL INDUSTRIES, INC., Defendant.**

**No. C2-94-501.**

United States District Court, S.D. Ohio, Eastern Division.

March 17, 1995.

Percy Squire, Bricker & Eckler, Columbus, OH and Erik Haas, Patterson, Belknap, Webb & Taylor, New York City, for plaintiff.

Duke Winston Thomas, Vorys, Sater, Seymour & Pease, Columbus, OH and Theodore W. Anderson, Chicago, IL, for defendant.

*OPINION AND ORDER*

GRAHAM, District Judge.

This is a patent infringement action brought by plaintiffs Ethicon Endo-Surgery and Ethicon, Inc. ("Ethicon") against defendant Richard-Allan Medical Industries, Inc. ("Richard-Allan"). Ethicon claims infringement of U.S. Patent No. 5,171,249 ("the '249 patent"), entitled "Endoscopic Multiple Ligating Clip Applier." This matter is before the Court on the cross motions of the plaintiff and defendant for summary judgment on the defense of inequitable conduct and on defendant's motion for summary judgment on the issue of obviousness.

Endoscopic surgery is minimally invasive surgery, in which a small puncture is made in the body by, an instrument called a trocar. Medical instruments are then inserted through a cannula, which is a sleeve that surrounds the trocar and provides a port of entry after the trocar is withdrawn. A miniaturized video camera is inserted through the cannula, enabling the surgical team to see what is happening inside the patient's body. Clip appliers are stapler-like devices used by surgeons to ligate blood vessels, ducts or other vessels during surgery. Clip appliers were first used by surgeons in conventional surgery as an alternative to sutures. The original clip appliers accepted only one clip at a time and had to be reloaded after each use. Multiple clip appliers, which have a mechanism for moving clips sequentially into the jaws of the clip applier, were introduced in the late 1970's and have been widely used in conventional surgery since then.

Since the late 1980's, endoscopic techniques have been adopted for use in a variety of surgical procedures and a number of instruments, including clip appliers, have been developed especially for use in endoscopic surgery. In endoscopic surgery, the wound caused by the trocar must be kept at a minimum, while at the same time providing the widest possible opening for the insertion of the video camera and surgical instruments. In the current state of the art, a trocar/cannula combination of 10/11 millimeters is the most common size. Surgical clips come in a variety of sizes, including small, medium and medium/large. Any of these could be used in endoscopic surgery depending on the size of the vessel or duct to be ligated. Gallbladder surgery is one of the most common kinds of endoscopic surgery and most surgeons would prefer to use medium/large clips in such surgery. Thus, in the current state of the art most surgeons performing endoscopic surgery would want to use a clip applier capable of closing medium/large clips in combination with a 10/11 millimeter trocar cannula.

The first endoscopic clip appliers were single clip appliers similar to those used in conventional surgery but with elongated rounded shafts that were just small enough to fit through the cannula. The first endoscopic multiple clip applier capable of applying a medium/large clip was developed by United States Surgical Corporation ("U.S. Surgical"). The jaws of the U.S. Surgical device are too wide to fit through a 10/11 millimeter cannula in the open position. In order for the device to work, U.S. Surgical had to utilize two triggers, one for loading the clip into the jaws and another for closing them. If the jaws of a clip applier are compressed while passing through the cannula, there is a risk that the clip will drop out of the jaws and fall into the abdominal cavity.

Ethicon's device, the subject of the '249 patent, is a multiple clip applier which applies medium/large clips. Its jaws are narrow enough to fit through the cannula in the open position and it utilizes a single trigger that allows the next clip to be advanced automatically into the jaws after the preceding clip has been applied. Because of the latter feature, Ethicon refers to its device as "fully automatic." Ethicon introduced its device to the market in July, 1991 and the Patent Office issued the '249 patent on December 15, 1992.

The '249 patent contains 44 claims. However, only one of those claims, Claim 36, is asserted by Ethicon in this litigation. Claim 36 reads as follows:

36. In combination:

a surgical trocar including a tubular cannula having a given internal diameter; and

an endoscopic multiple clip applier comprising, an elongated shaft assembly in-

cluding a jaw member having a pair of spaced apart jaws for receiving a surgical clip therebetween, said jaws extending outwardly from the distal end of said shaft assembly, said shaft assembly being generally cylindrical throughout its length and having an external diameter which permits said shaft assembly to be inserted into, and withdrawn from, said trocar cannula, a clip feed mechanism for storing an array of surgical clips within said elongated shaft assembly and for delivering a clip between said jaws, a jaw closure mechanism for moving said jaws from an open clip holding position to a closed clip closing position to apply a clip to body tissue, said jaws having a maximum width dimension between the outer surfaces in the open position that is no greater than the internal diameter of said trocar cannula and relatively the same as the outer diameter of said shaft assembly so that said shaft assembly with a clip positioned between said jaws can be inserted into, and withdrawn from, said trocar cannula without closing said jaws, and a handle assembly connected to said shaft assembly and containing a single trigger means operable to first actuate said jaw closure mechanism and close a clip positioned between said jaws and to thereafter automatically actuate said clip feeding mechanism to feed and position between said jaws the next clip from said array of clips.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### *INEQUITABLE CONDUCT*

Defendant asserts that there is no genuine dispute about the material facts which, according to defendant, establish as a matter of law that plaintiff's patent was procured by inequitable conduct in the Patent and Trademark Office ("PTO") and is accordingly unenforceable. Plaintiff asserts, to the contrary, that the facts relied upon by the defendant are insufficient as a matter of law to support the defense of inequitable conduct and that it is entitled to summary judgment on this issue.

The issue of inequitable conduct arises from representations and omissions made and omitted by plaintiff in its communications to the PTO regarding prior art allegedly relevant to the patentability of the '249 patent and specifically Claim 36 thereof. In particular, the issue arises from plaintiff's representations to the PTO distinguishing prior art on the grounds that previous endoscopic multiple clip appliers were not automatic and were not capable of being inserted into or withdrawn from a trocar cannula with a clip positioned between the jaws. Defendant asserts that when plaintiff made these representations it knew that in 1987 U.S. Surgical had developed an automatic multiple clip applier for endoscopic use known as the "Long Surgiclip" which was capable of being inserted into and withdrawn from a trocar cannula with a clip positioned between the jaws.[1] Defendant asserts that plaintiff failed

1. Defendant claims that plaintiff also knew that U.S. Surgical Corp.'s standard automatic multi-

to disclose this information to the PTO and falsely represented that its device was the only automatic multiple clip applier for endoscopic use which could be inserted into and withdrawn from a trocar with an open clip positioned between the jaws.

U.S. Surgical's Long Surgiclip was capable of applying a medium sized surgical clip and could be inserted into and withdrawn from a 10/11 millimeter trocar. Medium sized clips are also used in endoscopic surgery, although less frequently than the medium/large clip.[2] Plaintiff does not deny that it knew about U.S. Surgical's Long Surgiclip while it was prosecuting the '249 patent. Plaintiff also admits that although it disclosed U.S. Surgical's non-endoscopic automatic multiple clip appliers to the PTO as relevant prior art, it did not disclose the Long Surgiclip.

If the claims of the '249 patent are broad enough to include any endoscopic automatic multiple clip applier capable of being inserted through a trocar with an open clip in its jaws, then defendant's argument that U.S. Surgical's Long Surgiclip was material to the issuance of the '249 patent would seem to have merit. Claim 36 of the '249 patent on its face is indeed broad enough to include all such endoscopic automatic multiple clip appliers. Plaintiff asserts, however, that Claim 36 must be read to include certain limitations which render the U.S. Surgical Long Surgiclip irrelevant to the patentability of its device. Plaintiff asserts that one skilled in the art would understand that the term "endoscopic" as used in Claim 36 of the '249 patent would apply only to a medium/large surgical clip and a 10/11 millimeter trocar because in the "real world" of endoscopic surgery these are the dimensions of the devices in common use. Plaintiff asserts that Claim 36 should be read to apply only to endoscopic automatic multiple clip appliers for use with medium/large surgical clips in combination with a 10/11 millimeter trocar. Plaintiff argues that inasmuch as the U.S. Surgical Long Surgiclip was not capable of being used with a medium/large surgical clip, it was not relevant prior art. On this basis, plaintiff asserts that it had no duty to disclose the Long Surgiclip to the PTO and that its representations that its own device was the only endoscopic automatic multiple clip applier were true.

Proof of inequitable conduct requires a showing of "(1) prior art or information that is material; (2) knowledge chargeable to the applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 (Fed.Cir.1987). The elements of materiality of withheld information and culpable intent must be established by clear and convincing evidence. *LaBounty Mfg. Inc. v. U.S. Intern. Trade Com'n,* 958 F.2d 1066, 1070 (Fed.Cir.1992). There are genuine issues of fact regarding plaintiff's knowledge of the materiality of the U.S. Surgical Long Surgiclip and intent to mislead the PTO which preclude the granting of summary judgment to the defendant on the defense of inequitable conduct. However, the evidence does raise genuine issues of material fact which preclude the entry of summary judgment in favor of the plaintiff on this issue.

### *OBVIOUSNESS*

A patent is presumed to be valid and its invalidity can only be established by clear and convincing proof. 35 U.S.C. § 282. The claims of a patent should be construed in such a manner as to sustain their validity if such an interpretation can reasonably be made. *See e.g., Whittaker Corp. by its Technibilt Division v. UNR Industries, Inc.,* 911 F.2d 709, 712 (Fed.Cir.1990); *ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1577 (Fed.Cir.1984).

In responding to defendant's motion for summary judgment on the issue of inequita-

ple clip applier developed for open surgery could be used in endoscopic surgery as well.

2. Medium/large surgical clips have a width at the inner aperture of approximately 4 millimeters and are approximately 9 millimeters in length when closed. Medium sized surgical clips have a width at the inner aperture of approximately 3.5 millimeters and are approximately 6 millimeters long when closed.

ble conduct plaintiff asserted that Claim 36 of the '249 patent must be construed to include dimensional limits on the surgical clips and trocar cannula. Indeed, plaintiff went so far as to state that without such limitations, Claim 36 would be unpatentable for obviousness.[3] In its motion for summary judgment on the issue of obviousness, defendant argues that there are no size limitations expressed in Claim 36 and no grounds for interpreting that claim so as to contain such limitations and that accordingly, Claim 36 of the patent is invalid. The parties agree that it would be obvious that a solution to the problem of fitting a clip applier through a trocar cannula with a clip in its jaws without compressing the clip could be solved by enlarging the diameter of the trocar cannula or by narrowing the width of the jaws of the clip applier and that without dimensional limitations, Claim 36 of the '249 Patent would cover that obvious solution.

Claim interpretation is a question of law amenable to summary judgment, *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1579–80 (Fed.Cir.1989), and disagreement over the meaning of a term within a claim does not necessarily create a genuine issue of material fact. *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 797 (Fed.Cir.1990).

Claim 36 of the '249 patent contains no dimensional limitations and would on its face apply to any endoscopic automatic multiple clip applier used in combination with a trocar cannula in which the jaws are sufficiently narrow to fit through a cannula without closing the jaws. In Claim 36, the trocar cannula is described only as "a tubular cannula having a given internal diameter." Likewise, no limitations are recited for the jaw member or the surgical clips referred to in the claim. Furthermore, there are no dimensional limitations in the specification or the drawings.

Plaintiff argues that a trocar of a "given" diameter in combination with an "endoscopic" clip applier means a 10/11 millimeter trocar and a clip applier capable of applying medium/ large clips. The words of a claim must be given their ordinary meaning unless it appears that the inventor used the terms differently. "Although a patentee can be his own lexicographer, as we have repeatedly said, the words of a claim 'will be given their ordinary meaning, unless it appears that the inventor used them differently." *Hoganas AB v. Dresser Industries, Inc.,* 9 F.3d 948, 951 (Fed.Cir.1993); *see also Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992).

The '249 patent contains no special definitions of the words "given" or "endoscopic." Therefore in construing Claim 36, the words "given" and "endoscopic" should be given their ordinary meaning. Thus, "a tubular cannula having a given internal diameter" would mean a tubular cannula having an assumed or hypothetical internal diameter, i.e. one of no fixed or specific diameter. *See Webster's Third New International Dictionary.* Likewise, "endoscopic" would mean any device capable of being used with an endoscope, an instrument for visualizing the interior of a hollow organ or body cavity. "Endoscopic" would not connote any size limitation, except perhaps the general limitation of a size sufficiently small to be able to be inserted into an orifice or incision in the human body.

Plaintiff argues that notwithstanding the absence of any special definitions of these words in the patent, one skilled in the art would understand that "given internal diameter" and "endoscopic," as used in Claim 36 signify that the cannula referred to in the claim is a 10/11 millimeter cannula and that the surgical clips referred to in the claim are medium/large surgical clips, since these are the standard in the field of endoscopic surgery. This argument is unavailing because it is undisputed that medium sized surgical clips are used in endoscopic surgery and are thus, "endoscopic." In fact plaintiff itself markets an endoscopic clip applier designed for use with medium sized surgical clips.[4]

3. Memorandum in opposition to Richard-Allan's motion, etc. Doc. 82, p. 4.

4. It is also undisputed that there are minor variations in the sizes of trocar cannulas and surgical clips within categories made by various manufacturers and that there is no precise or uniform standard dimension for a medium or medium/large surgical clip.

Plaintiff's contention that one skilled in the art would understand that Claim 36 includes the limitations of a 10/11 millimeter trocar and a medium/large surgical clip does not present a genuine issue of material fact. The Court likewise finds no merit in plaintiff's argument that testimony regarding the intent of the inventors or spatial relationships depicted in the unscaled patent drawings raise genuine issues of fact regarding size limitations in Claim 36.

Plaintiff further argues that part of the prosecution history of the '249 patent includes representations regarding the dimensions of the trocar cannula and surgical clips which supply the limitations it wishes to read into Claim 36. Plaintiff refers to the remarks section of its Response to Office Action, Dated April 30, 1992 in which its patent counsel summarized an interview with the patent examiners. The remarks include, *inter alia,* the following description of a demonstration of plaintiff's device at the interview:

> As was demonstrated at the interview, applicant's commercial embodiment of applicant's device is not only automatic, but can apply medium/large clips having about a 5.33 millimeter width between the outer surfaces of their legs. This permits the instrument to be used with a trocar having a cannula with an internal diameter of about 10 millimeters.

"It is elementary that resort must be had in the first instance to the words of the claim which define the metes and bounds of the invention." *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 759 (Fed.Cir. 1984). Limitations not found in the language of a claim cannot be read into the claim. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430 (Fed.Cir.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). Limitations appearing in the patent specification cannot be read into the claims. *Id.* Nor is it permissible to inject into claims limitations referred to in the prosecution history. *Intervet America, Inc. v. Kee–Vet Labs, Inc.,* 887 F.2d 1050, 1053 (Fed.Cir.1989).

While limitations contained in the specification or prosecution history may be used where necessary to interpret what the patentee meant by a word or phrase in a claim, *see e.g., Minnesota Mining & Mfg. v. Johnson & Johnson,* 976 F.2d 1559 (Fed.Cir. 1992), there is no warrant for resorting to the prosecution history for such a purpose in this case. The words of Claim 36 are plain, they do not include any dimensional limitations on the size of the trocar or the surgical clip. The absence of limitations and the use of the word "given" when referring to the internal diameter of the cannula reflect a conscious intent by the drafter of this claim to make it as broad as possible so as to include a trocar of any size in combination with a clip applier having jaws of any size. In oral argument on this motion, counsel for plaintiff admitted that Claim 36 was so intended:

> There could be, the reason the claim is not written with specific numerical dimensions, art does change. Things may be available later on with the advent of better suturing, when you are coming out of the abdomen, you can use larger trocars, and then we could use larger jaws, larger clips, etc.

Hearing, November 17, 1994, Tr. Vol. VI–30.

Likewise, in opposing defendant's motion for summary judgment of non-infringement, plaintiff said with respect to Claim 36:

> In construing a patent claim, the focus must be on the language of the claim itself. That is crucial because it is the claim—rather than statements in the prosecution history or the patent specification—that defines the metes and bounds of the invention ...
>
> If, as is the case here, the claim was drafted so as to obtain the broadest coverage with the fewest "limitations" on the scope of coverage, it is entitled to be so construed.

Ethicon's Memorandum in Opposition to Richard–Allan's Motion For Summary Judgment, Doc. 48, pp. 17–18. Plaintiff offered in support of this proposition the declaration of John P. Milnamow, its outside patent counsel who prosecuted the application for the '249 Patent. Mr. Milnamow stated:

> Thus, not only is this prosecution history consistent with my intent and the objective construction which a facial reading of

Claim 36 compels, but it reinforces my intention to have this particular claim contain as broad coverage as possible. The only objective limitations in the claim are the jaws, which extend outwardly from the shaft and must be wide enough to receive the clip but narrow enough to be entered into a trocar without compressing, and the *single* trigger ... It was my intent and it remains my professional opinion that any endoscopic multiple clip applier having these characteristics infringes this claim. (Emphasis in the original).

Milnamow Declaration, Appendix to Ethicon's Memorandum in Opposition to Richard–Allan's Motion For Summary Judgment, Doc. 48.

The prosecution history plaintiff relies on to import limitations into Claim 36 consists only of a description of a demonstration of a device. There is no suggestion in the description that plaintiff's patent lawyers represented to the patent examiners that plaintiff intended that the claims of the patent would be limited to the dimensions of the device demonstrated. Even if the Court were persuaded that it was proper to consider this part of the prosecution history to interpret Claim 36, it would add nothing of value to the interpretation and would raise no genuine issue of fact relating to the existence of dimensional limitations in that claim.

Plaintiff solved the problem of designing an endoseopic automatic multiple clip applier for medium/large clips with jaws narrow enough to fit through a 10/11 millimeter trocar cannula with the jaws in the open position. It did so by incorporating a design feature in the jaws which plaintiff refers to as a "primary heel." The claims of the '249 patent relating to the jaw and other specific aspects of the Ethicon device may well be valid and enforceable. In this case, however, Ethicon has elected to assert only the broadest claim in its patent, Claim 36 which, by its own admission fails for obviousness in the absence of size limitations which do not appear in the claim and which the Court concludes cannot properly be read into the claim. Accordingly, defendant's motion for summary judgment on the issue of obviousness is well taken.

The Clerk shall enter final judgment in favor of the defendant dismissing this action with prejudice at plaintiff's costs.

It is so ORDERED.